LESTER JOHNSON AND HELEN R. JOHNSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Johnson v. Commissioner
Docket No. 13484-90
United States Tax Court
T.C. Memo 1994-350; 1994 Tax Ct. Memo LEXIS 354; 68 T.C.M. (CCH) 217; July 26, 1994, Filed *354 Decision will be entered under Rule 155. Lester Johnson, pro se. For respondent: Robert M. Morrison. WELLS
WELLS
MEMORANDUM FINDINGS OF FACT AND OPINION WELLS, Judge: Respondent determined deficiencies in and additions to petitioners' Federal income tax [1] as follows:
Additions to Tax
Year
Deficiency
Sec. 6653(b)(1)(A)
Sec. 6653(b)(1)(B)
Sec. 6661 1986
$ 85,850
$ 64,388
[1]
$ 21,462
1987
60,380
45,285
[1]
15,095
Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. After concessions, [2] the issues for decision [3] are: (1) Whether petitioners failed *355 to report income during the taxable years in issue; (2) whether petitioners are liable for self-employment tax under section 1401 for the taxable years in issue; (3) whether petitioner Lester Johnson is liable for additions to tax for fraud under section 6653(b) for the taxable years in issue; and (4) whether petitioners are liable for additions to tax for substantially understating income tax under section 6661 for the taxable years in issue. *356 FINDINGS OF FACT Some of the facts and certain documents have been stipulated for trial pursuant to Rule 91. The parties' stipulations are incorporated into this Memorandum Opinion by reference. Petitioners are married and filed joint income tax returns for the taxable years in issue. At the time petitioners filed their petition, they resided in Corpus Christi, Texas. All references to petitioner in the singular are to petitioner Lester Johnson. Petitioner's Background
Petitioner dropped out of high school at the age of 16 and entered the U.S. Navy. While serving in the Navy, petitioner also worked part time doing odd jobs such as waxing cars, shining shoes, and working as a carpenter. Petitioner never reported his income from such part-time jobs. During 1984, after 29 years of service in the Navy, petitioner retired as a commissioned officer with the rank of lieutenant commander. Petitioners' Business Activities
After petitioner's retirement from the Navy, he purchased several rental properties including an apartment building and a motel that was known as "the Johnsons Rooms". Petitioners managed the rental properties and maintained vending machines at the *357 Johnsons Rooms. Petitioner Helen R. Johnson worked as a teacher for several years prior to the years in issue. During 1986 through 1987, petitioner Helen R. Johnson rendered services at St. Matthews Baptist Church as well as Speedy Food Service, Inc.[4]
Petitioner's Cocaine Business
During 1986, petitioner started selling cocaine. Initially, petitioner contacted Willie Dorcey and requested that Mr. Dorcey acquire cocaine for him. Mr. Dorcey obtained two 8 balls of cocaine [5] for petitioner and educated petitioner in purchasing, packaging, distributing, and selling cocaine. Petitioner then proceeded to conduct cocaine sales at the Johnsons Rooms. Petitioner was soon selling cocaine 24 hours a day and had a large client base. *358 Petitioner hired Mr. Dorcey as a "lookout" for his cocaine business. As a "lookout", Mr. Dorcey would whistle, howl, or otherwise get petitioner's attention to warn him that the police were nearby. Petitioner paid Mr. Dorcey in cash or cocaine for his services as the "lookout". Petitioner usually sold the cocaine for $ 20 per paper. [6] Petitioner sometimes exchanged cocaine for stolen goods such as clothing, which customers would provide in lieu of or in addition to cash. Petitioner also sold cocaine on credit. Petitioner's business was very lucrative. *359 Petitioner had many regular customers who referred to him as "the Candyman". Among his regular customers were the following individuals: Willie Dorcey, Larry Dennison, Ernesto Scott, Pamela Mayes, Lisa Williams, and Benjamin Ford. Petitioner Helen R. Johnson was unaware of petitioner's cocaine business. The Investigation of Petitioner's Cocaine Business
Petitioner continued to sell cocaine until September of 1988. During September 1988, pursuant to a valid search warrant, the Criminal Investigation Division (CID) of the Internal Revenue Service (IRS), as well as other State and Federal agencies, [7] searched petitioner's residence, his office at 1517 Sam Rankin Street, and the Johnsons Rooms in order to obtain business records to document petitioner's cocaine business. While searching the three locations, the IRS seized incomplete bank records, miscellaneous financial documents, a nominal amount of cash, and some drug paraphernalia including aluminum foil squares for wrapping cocaine and hypodermic needles. The IRS also seized a small notebook from petitioner's residence filled with names and numbers. *360 The IRS made an inventory of the seized items. Petitioners received a copy of the inventory list, which noted all items taken from the three locations by the various law enforcement agencies. Later, the IRS returned all documents to petitioners and received a receipt acknowledging the return of petitioners' records to them. Petitioner's Cash on Hand
After the IRS completed its search, Special Agent Edward Dubberke (Special Agent Dubberke) of the CID and Sergeant Robert Bridge of the Corpus Christi Police Department conducted a voluntary interview of petitioner. Special Agent Dubberke questioned petitioner regarding his cash on hand; i.e., all cash available to him other than cash in the bank. Petitioner explained that he had less than $ 10,000 available to him outside the bank and never carried more than $ 600 to $ 700 at one time. Special Agent Dubberke also questioned petitioner regarding his rental income. Petitioner claimed that he had reported all of his rental income on his 1986 and 1987 tax returns. During 1992, IRS Revenue Agent Richard Laakso (Agent Laakso) met with petitioner to discuss petitioner's tax liability for taxable year 1988, which is not a part *361 of the instant case. During the course of the discussion, Agent Laakso questioned petitioner with respect to his cash on hand. Petitioner claimed that his cash on hand was approximately $ 13,000. Credit Arrangements and Loans
On September 30, 1978, petitioners obtained an extension of credit for $ 3,188 with an annual interest rate of 13.69 percent from Mercantile National Bank to purchase an air conditioner for their residence. On October 3, 1980, petitioners obtained a loan for $ 2,493.51 with an annual interest rate of 16.06 percent from Commercial Credit Corp. and listed household furniture and a Baldwin piano as collateral for the loan. Criminal Proceedings Against Petitioner
During September 1989, petitioner was indicted on several counts of conspiracy to possess and distribute more than 5 kilograms of cocaine. Petitioner was tried and convicted as charged on several of the counts. The Court of Appeals for the Fifth Circuit reversed petitioner's conviction and remanded the proceeding for a new trial. At the second trial, petitioner entered into a plea bargain with the U.S. Government and pled guilty to one of the counts of the indictment. Petitioner was *362 then confined to the Federal Correctional Institution, Unit A-11 in Seagoville, Texas. On or about February 23, 1993, petitioner was relocated to the Federal Prison Camp B-68 in Anthony, New Mexico/Texas. Petitioner is currently incarcerated at that facility. Petitioner attended the trial of the instant case pursuant to a writ of habeas corpus ad testificandum. Respondent's Reconstruction of Petitioners' Income
IRS Revenue Agent Marcia Vanterpool (Agent Vanterpool) was assigned to review petitioners' bank statements, deposit slips, and canceled checks [8] *363 from the six bank accounts [9] (the bank accounts) that petitioners maintained during taxable years 1986 and 1987. She subsequently completed bank deposits worksheets for the taxable years in issue. All deposits made by petitioners were considered to be taxable unless a notation on a deposit slip or check indicated otherwise or the income was traceable to an identifiable nontaxable source. Taxable Year 1986
Respondent calculated that petitioners made total deposits of $ 274,008 into all of the bank accounts during taxable year 1986. Of the $ 274,008 deposited, nontaxable deposits amounted to $ 39,320. Respondent then identified $ 6,021 in cash receipts that petitioner had not deposited in any of the bank accounts during 1986. On their 1986 joint income tax return, petitioners reported $ *364 56,770 in income. Respondent determined that petitioners had not reported income from their rental properties, from vending machines at the Johnsons Rooms, from St. Matthews Baptist Church, and from Speedy Food Service, Inc. Respondent further determined that petitioner had not reported income from cocaine sales. Accordingly, based on the bank deposits method, respondent calculated that petitioners had failed to report income for taxable year 1986 in the amount of $ 183,939. [10]
Taxable Year 1987
Respondent calculated that petitioners made total *365 deposits of $ 251,955 into all of the bank accounts during taxable year 1987. Of the $ 251,955 deposited, nontaxable deposits amounted to $ 28,456. Respondent then identified $ 11,121 in cash receipts which petitioners had not deposited during 1987. On their 1987 joint income tax return, petitioners reported $ 45,737 in income. Respondent determined that petitioners had not reported income from their rental properties, from vending machines located at the Johnsons Rooms, from St. Matthews Baptist Church, and from Speedy Food Service, Inc. Respondent further determined that petitioner had not reported income from cocaine sales. Accordingly, based on the bank deposits method, respondent calculated that petitioners had failed to report income for taxable year 1987 in the amount of $ 188,883. [11]
*366 Jeopardy Assessment and Notice of Deficiency
On March 20, 1990, respondent mailed a notice of deficiency and a notice of jeopardy assessment and right of appeal. In addition to determining that petitioners underreported their income for taxable years 1986 and 1987 and failed to pay self-employment taxes on such income, respondent determined additions to tax for fraud against petitioner and additions to tax for substantial understatement of income tax against petitioners for taxable years 1986 and 1987. OPINION Unreported Income From Cocaine Sales
Respondent contends that petitioners failed to report income during 1986 and 1987. As noted above, respondent concedes that petitioner Helen R. Johnson is an innocent spouse pursuant to section 6013(e) with respect to income derived from cocaine sales. Except as to the concessions noted above, petitioners contend that the unreported income determined by respondent arises out of several nontaxable sources. Gross income is "all income from whatever source derived" and includes income derived from a business. Sec. 61(a). Taxpayers are required to maintain books and records sufficient to establish gross income. Sec. 6001; *367 DiLeo v. Commissioner, 96 T.C. 858, 867 (1991), affd. 959 F.2d 16 (2d Cir. 1992); Estate of Mason v. Commissioner, 64 T.C. 651, 656 (1975), affd. 566 F.2d 2 (6th Cir. 1977). In the event a taxpayer's books and records are inadequate for the purpose of ascertaining the taxpayer's income, respondent is authorized to reconstruct the taxpayer's income by any reasonable method which will clearly reflect income. Sec. 446; Holland v. United States, 348 U.S. 121, 130-132 (1954); Petzoldt v. Commissioner, 92 T.C. 661, 686-687 (1989); Conforte v. Commissioner, 74 T.C. 1160, 1181 (1980), affd. in part, revd. on other grounds and remanded 692 F.2d 587 (9th Cir. 1982). The bank deposits method has long been sanctioned by the courts as a reasonable method to reconstruct a taxpayer's income. DiLeo v. Commissioner, supra at 867. When utilizing the bank deposits method, the Commissioner reconstructs a taxpayer's income by analyzing *368 deposits into and withdrawals from all of the taxpayer's bank accounts. Dodge v. Commissioner, 96 T.C. 172, 181 (1991), affd. in part, revd. in part and remanded 981 F.2d 350 (8th Cir. 1992). The bank deposits method assumes that all money deposited into a taxpayer's bank account during a given period constitutes taxable income. Price v. United States, 335 F.2d 671, 677 (5th Cir. 1964). Deposits of nontaxable items such as loan proceeds or loan repayments, however, are not income and must be subtracted from total bank deposits to arrive at gross receipts. Mallette Bros. Constr. Co. v. United States, 695 F.2d 145, 149 (5th Cir. 1983); United States v. Boulet, 577 F.2d 1165, 1167 (5th Cir. 1978); Reaves v. Commissioner, 31 T.C. 690, 718-719 (1958), affd. 295 F.2d 336 (5th Cir. 1961); Williams v. Commissioner, T.C. Memo. 1994-275. Petitioners do not contest the use of the bank deposits method in the instant case. Petitioners, however, contend *369 that the deposits made into the bank accounts are traceable to several nontaxable sources. Petitioners have the burden of proving that the deposits were derived from nontaxable sources. [12] Rule 142(a); Dodge v. Commissioner, supra; Reaves v. Commissioner, supra.
*370 Petitioners first contend that a portion of the unreported income represents the repayment of loans that petitioner made to the following individuals: Willie Dorcey, Elizabeth Brown, Stella Graves, Rosalie Alexander, Joe Alenesto, Anthony Darden, Allen King, Sherman Gold, Leroy Johnson, Etta Fox, Robert Smith, Larry Dennison, and Eddie Johnson. Respondent concedes that petitioner received $ 190 in loan repayments from Mr. Dorcey during taxable year 1986 which is not includable in petitioners' taxable income based on the testimony of Mr. Dorcey. Petitioners, however, have failed to prove that any of the other cash deposits were the result of loan repayments from the above-mentioned individuals. Petitioners offered deposit slips and bank statements to establish that certain deposits were the nontaxable repayment of loans. The deposit slips, however, fail to identify the source of the cash, and the bank statements do not include many of the alleged deposits. Petitioners offered additional proof with respect to alleged loan repayments from Leroy Johnson. Petitioners contend that several pages in the small notebook which the IRS seized from petitioners' residence establish that *371 certain deposits made were loan repayments from Leroy Johnson to petitioner. In reviewing the entries in the notebook, we are unable to view the entries with the same significance as petitioner asserts. The notebook contains a disorganized list of numbers. Some of the numbers have been crossed out and some of the pages have been completely defaced. In short, we have no independent basis on which to conclude that the numbers in the notebook represent Leroy Johnson's repayment of loans to petitioner. Consequently, we hold that petitioners have failed to prove that such deposits were the repayment of loans. Petitioners' next contention is that the unreported income is actually attributable to a cash hoard of $ 193,000 that petitioner accumulated during his years in the Navy. Petitioners contend that, unbeknownst to petitioner wife, petitioner stored the alleged cash hoard in a briefcase in the attic of his residence. Respondent contends that other elements of the record establish that petitioner did not have a cash hoard in his attic. We agree with respondent. Although petitioner presented a detailed account of how much cash he saved each year in order to accumulate $ 193,000 *372 by 1986, we find petitioner's testimony to be incredible in light of the rest of the record. During the course of the trial, petitioner testified that he had accumulated $ 161,805 by 1981, $ 185,305 by 1983, and $ 193,000 by 1984. The independent evidence in the record, however, establishes that petitioner never had more than $ 10,000 on hand. Prior to the years in issue, petitioner completed several financial applications to obtain credit. The financial applications required that petitioner divulge his cash on hand. On June 18, 1981, petitioner certified as true and correct that his cash on hand was $ 9,000. On July 27, 1983, petitioner certified as true and correct that his cash on hand was $ 7,640. On January 3, 1985, petitioner certified as true and correct that his cash on hand was $ 9,145. Additionally, when Agent Dubberke interviewed petitioner, petitioner claimed that his cash on hand at the beginning of taxable year 1986 never exceeded $ 10,000. A review of petitioner's taxable income during the years in which he asserts that he accumulated his alleged hoard further establishes the unlikelihood that petitioner had a secret cash hoard. During 1967 through 1975, petitioner's *373 taxable income ranged from $ 1,776 to $ 8,905. During 1976 through 1986, petitioner's taxable income ranged from $ 11,876 to $ 28,199. In light of such reported income, we are not convinced that petitioner had sufficient resources from which to accumulate a $ 193,000 cash hoard. [13] See Kearns v. Commissioner, T.C. Memo. 1991-320, affd. 979 F.2d 1176 (6th Cir. 1992). Finally, petitioner testified that he maintained a diary which petitioners contend substantiates petitioner's alleged cash hoard. Petitioners, however, failed to produce the diary at trial. Petitioner *374 also testified that his wife was unaware of the alleged cash hoard, so that she was unable to corroborate his testimony. Additionally, petitioner testified that he wrote a letter to his wife telling her of the alleged cash hoard. According to petitioner, the letter was hidden in a briefcase and was only to be opened by his wife in the event of petitioner's death. Petitioner, however, failed to produce the letter at trial and did not offer the testimony of his wife. Based on a review of the entire record, we hold that petitioners' unreported income was not the result of a cash hoard. Petitioners next assert that the unreported income is nontaxable because it consists of the following: (1) Loan proceeds; (2) reimbursements from friends or acquaintances for credit card charges that petitioner made on their behalf; (3) money belonging to petitioner's daughter which was deposited to repay cosigned bank loans; (4) money belonging to petitioner's mother which was deposited to be used on her behalf; (5) money belonging to petitioner's brother which was deposited to be used on his behalf; (6) money deposited for petitioner's minor grandson; (7) money belonging to third parties which was *375 deposited for payments on their behalf; (8) casualty insurance payments; (9) insurance proceeds for damage to an automobile; (10) repayment of cash advances; (11) money from petitioner Helen R. Johnson's parents for medical bills and day care expenses of their grandchildren; and (12) return of funds. Petitioners, however, have not offered any documentation of the aforementioned sources. The only evidence offered is petitioner's self-serving statements. [14] We need not accept at face value such uncorroborated testimony if it is questionable, improbable, or unreasonable. Quock Ting v. United States, 140 U.S. 417, 420-421 (1891); Fleischer v. Commissioner, 403 F.2d 403, 406 (2d Cir. 1968), affg. T.C. Memo. 1967-85; Boyett v. Commissioner, 204 F.2d 205, 208 (5th Cir. 1953), affg. a Memorandum Opinion of this Court; Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). Under the circumstances of the instant case, we find such testimony to be highly questionable. Moreover, petitioners could have called witnesses to establish the source of *376 the deposits. Petitioner's daughter was in the courtroom at one point during the trial, and petitioner failed to call her to the stand to testify. "The rule is well established that the failure of a party to introduce evidence within his possession and which, if true, would be favorable to him, gives rise to the presumption that if produced it would be unfavorable." Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). Based on the record in the instant case, we hold that petitioners have failed to prove that the unreported income in issue arises out of their alleged nontaxable sources. Consequently, we sustain respondent's determination as to the *377 unreported income from cocaine sales for taxable years 1986 and 1987. Self-Employment Tax
Respondent determined that petitioners are liable for self-employment tax for taxable years 1986 and 1987 on their unreported income. Petitioners concede their liability for self-employment tax as to petitioner Helen R. Johnson's income from St. Matthews Baptist Church and Speedy Food Service, Inc.
Section 1401 provides that a tax shall be imposed on the self-employment income of every individual. The term "self-employment income" means an individual's net earnings from selfemployment. Sec. 1402(b). Section 1402(a) defines the term "net earnings from self-employment" as the gross income of an individual from any trade or business carried on by the individual less allowed deductions. Pursuant to section 1402, a trade or business has the same meaning as in section 162. Sec. 1402(c). To be engaged in a trade or business under section 162, the Supreme Court has stated that "the taxpayer must be involved in the activity with continuity and regularity and that the taxpayer's primary purpose for engaging in the activity must be for income or profit." Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987). *378 Self-employment tax is also applicable to income from an illegal trade or business such as selling drugs. Petzoldt v. Commissioner, 92 T.C. 661, 698 (1989). Petitioners have the burden of proving that they are not liable for self-employment tax on their rental and vending machine income. Petitioners, however, have failed to offer any evidence or make any arguments that they are not liable for self-employment tax. Consequently, we sustain respondent's determination as to the self-employment tax on the rental and vending machine income. Petitioner has the burden of proving that he is not liable for self-employment tax on his income from cocaine sales. Rule 142(a). Petitioner has failed to offer any evidence or make any arguments that he is not liable for self-employment tax. Consequently, we sustain respondent's determination with respect to the income from cocaine sales. Additions to Tax for Fraud
Respondent also determined that petitioner was liable for the additions to tax for fraud pursuant to section 6653(b) for the taxable years in issue. Section 6653(b) provides for an addition to tax of 50 percent of the amount of the underpayment *379 for taxable years 1986 and 1987 if any part of the underpayment is due to fraud. Section 6653(b)(1)(B) also provides for an addition to tax in the amount of 50 percent of the interest payable with respect to the portion of the underpayment attributable to fraud for taxable years 1986 and 1987. As noted above, respondent determined that petitioner Helen R. Johnson is not liable for the additions to tax for fraud. "Fraud is defined as an intentional wrongdoing designed to evade tax believed to be owing." DiLeo v. Commissioner, 96 T.C. 858, 874 (1991), affd. 959 F.2d 16 (2d Cir. 1992). The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud will never be presumed. Beaver v. Commissioner, 55 T.C. 85, 92 (1970). Respondent has the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b). To establish petitioner's liability for the additions to *380 tax for fraud, respondent must prove that petitioner underpaid his taxes for each of the years in issue. DiLeo v. Commissioner, supra at 873; Parks v. Commissioner, 94 T.C. 654, 660-664 (1990); Hebrank v. Commissioner, 81 T.C. 640, 642 (1983). In an unreported income case where respondent has indirectly reconstructed a taxpayer's income, respondent may prove an underpayment in one of two ways. Respondent may prove an underpayment by showing a likely source of income. Parks v. Commissioner, supra at 661 (citing Holland v. United States, 348 U.S. 121 (1954) and Nicholas v. Commissioner, 70 T.C. 1057 (1978)). In the alternative, if the taxpayer asserts that the unreported income is traceable to a nontaxable source, respondent may satisfy the burden of proof by disproving the alleged nontaxable source. Id. (citing United States v. Massei, 355 U.S. 595 (1958) and Kramer v. Commissioner, 389 F.2d 236, 239 (7th Cir. 1968), affg. *381 T.C. Memo. 1966-234). Respondent may disprove alleged nontaxable sources of income by establishing that the reconstruction of income is accurate in conjunction with a showing that petitioner's allegations of nontaxable sources are inconsistent, implausible, and not supported by objective evidence in the record. Id.
Respondent has established that a likely source of petitioner's unreported income is his cocaine sales. Petitioner testified that he pled guilty to one count of selling cocaine, for which he is currently incarcerated. In addition, Willie Dorcey, Pamela Mayes, and Lisa Williams testified as to petitioner's involvement in selling cocaine at the Johnsons Rooms and the "thousands" of dollars that he collected. Respondent has also disproved the nontaxable sources alleged by petitioner. Respondent's reconstruction of petitioner's income using the bank deposits method was accurate and reliable. As noted above, petitioner does not contest the use of the bank deposits method and does not dispute that the cash deposits were made. Additionally, petitioner's allegations that the deposits were loan repayments, were from a $ 193,000 cash hoard, *382 or were from a host of other nontaxable sources are implausible and incredible in light of the rest of the record. Respondent also has the burden of proving that petitioner had the requisite fraudulent intent. DiLeo v. Commissioner, supra at 873; Parks v. Commissioner, supra at 664-665; Hebrank v. Commissioner, supra at 642. Respondent's burden is met by a showing that petitioner intended to conceal, mislead, or otherwise prevent the collection of taxes. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968); Katz v. Commissioner, 90 T.C. 1130, 1143 (1988); Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). Fraudulent intent may be proved, however, by circumstantial evidence because direct proof of the taxpayer's intent is rarely available. DiLeo v. Commissioner, supra at 874-875; Parks v. Commissioner, supra at 664; Rowlee v. Commissioner, supra.The taxpayer's entire *383 course of conduct may establish the requisite fraudulent intent. Stephenson v. Commissioner, 79 T.C. 995, 1005-1006 (1982), affd. 748 F.2d 331 (6th Cir. 1984); Stone v. Commissioner, 56 T.C. 213, 223-224 (1971). In Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), affg. T.C. Memo. 1984-601, the Ninth Circuit Court of Appeals enunciated a nonexhaustive list of factors which demonstrate fraudulent intent. These "badges of fraud" include: (1) Understating income; (2) maintaining inadequate records; (3) failing to file tax returns; (4) providing implausible or inconsistent explanations of behavior; (5) concealing assets; (6) failing to cooperate with the tax authorities; (7) engaging in illegal activities; (8) attempting to conceal illegal activities; (9) dealing in cash; and (10) failing to make estimated tax payments. Recklitis v. Commissioner, 91 T.C. 874, 910 (1988); see Webb v. Commissioner, 394 F.2d 366 (5th Cir. 1968), affg. T.C. Memo. 1966-81. *384 Respondent contends that the following acts, when viewed as a whole, establish petitioner's fraudulent intent: (1) Petitioner's understatement of income from St. Matthews Baptist Church, Speedy Food Service, Inc., vending machines, rental activities, and cocaine sales during 1986 and 1987; (2) petitioner's failure to report the full amount of his rental income for taxable years 1983 through 1985; (3) petitioner's failure to report income from part-time employment during his 29 years in the Navy; (4) petitioner's failure to keep adequate books and records; (5) petitioner's implausible explanation that his unreported income was the result of a cash hoard; (6) petitioner's misleading statements to Agent Dubberke on September 2, 1988, that he properly reported his rental income; (7) petitioner's denial that Mr. Dorcey had worked for him as a lookout in the cocaine business; (8) petitioner's denial about his involvement with drugs; and (9) petitioner's involvement in the illegal activity of selling cocaine. Petitioner does not refute any of the badges of fraud, except in his assertion that the unreported income resulted from a cash hoard, which we have found to be implausible. Considering *385 petitioner's entire course of conduct established by the record in the instant case, we hold that respondent has proved by clear and convincing evidence that the entire amount of each underpayment is due to fraud. Accordingly, we hold that petitioner is liable for the fraud additions to tax for each of the years in issue. Additions to Tax for Substantial Understatement of Income Tax
Section 6661(a) imposes an addition to tax on a substantial understatement of income tax. An understatement is substantial where it exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1)(A). Petitioners had a substantial understatement for both taxable years 1986 and 1987. The section 6661 addition to tax is not applicable, however, if there is or was substantial authority for the taxpayer's treatment of the items in issue or if the relevant facts relating to the tax treatment were adequately disclosed on the return. Sec. 6661(b)(2)(B)(i) and (ii). Petitioners have not made any arguments regarding the substantial underpayment addition to tax. Accordingly, we hold that petitioners are liable for the addition to tax under section 6661. *386 To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. Respondent determined the additions to tax under sec. 6653(b)(1)(A) and (B) for taxable years 1986 and 1987 against petitioner Lester Johnson only, and respondent determined that petitioner Helen R. Johnson is not liablew for such additions.↩
1. 50 percent of the interest due on the deficiency.↩
2. Petitioners concede that they failed to report income from rental activities, vending machines, St. Matthews Baptist Church, and Speedy Food Service, Inc. Petitioners further concede that they are liable for self-employment tax on the income from St. Matthews Baptist Church and Speedy Food Service, Inc. Respondent concedes that petitioner Helen R. Johnson is an "innocent spouse" under sec. 6013(e) with respect to alleged unreported income from cocaine sales.↩
3. On Apr. 2, 1991, petitioner Helen R. Johnson filed a ch. 11 bankruptcy petition. On Aug. 2, 1991, respondent notified this Court of the pending bankruptcy case. On Aug. 13, 1991, this Court ordered that all proceedings in the Tax Court be stayed pursuant to 11 U.S.C. sec. 362(a)(8) (1988)↩ to the extent that the proceedings relate to petitioner Helen R. Johnson. The Court also issued an order to show cause why the proceedings should not be stayed as to petitioner Lester Johnson. In a subsequent order dated Sept. 23, 1991, this Court ordered that the proceedings be stayed as to petitioner Lester Johnson as well. On Nov. 16, 1992, the bankruptcy court lifted the stay with respect to the instant case.
4. The record contains very little information as to petitioner Helen R. Johnson's background and her employment as a teacher. In addition, the record is unclear as to the type of services petitioner Helen R. Johnson provided to St. Matthews Baptist Church or Speedy Food Service, Inc.↩
5. An eight ball is equal to one-eighth of an ounce.↩
6. The term "paper" refers to a small square piece of aluminum foil that petitioner used to wrap an individual portion of cocaine for sale. The quantity of cocaine placed into each paper was not carefully measured, but was estimated by sight. Petitioner sold "fat papers", i.e., papers containing more cocaine than those of competing drug dealers.↩
7. The IRS worked in conjunction with the Corpus Christi Police Department, the Department of Public Safety Officers, the Naval Investigative Service, and the U.S. Marshals Service.↩
8. Agent Vanterpool first reviewed records which had been received directly from the bank. For certain months, however, the bank had been unable to provide any records. Agent Vanterpool checked to see if any of the missing months could be found among the original bank statements seized from petitioner's residence and business locations by the IRS. All months for which Agent Vanterpool was unable to find records were not included in her analysis.↩
9. The following chart summarizes the different bank accounts held by petitioners during the taxable years in issue: Names On
Account No.
Bank
Account
409-920-6
Citizens
Lester Johnson and
Gloria Wallace Gloria Wallace is petitioner's sister.
[1]
369-744-4
M
Lester Johnson
35-4030-8
First Commerce
Lester Johnson
72-781-8
First Commerce
Lester or Helen R.
Johnson
36-2109-4
First Commerce
Helen R. Johnson
465625556
Teachers Credit
Helen R. Johnson and
Union
Lester Johnson
↩
Account No.
Type of Account
409-920-6
joint savings
369-744-4
individual
checking
35-4030-8
joint checking
72-781-8
joint savings
36-2109-4
individual
checking
465625556
joint share
10. Petitioners stipulated that they did not report $ 47,474.30 in income as follows: St. Matthews Church income
$ 3,540.00
Speedy Food Service, Inc. income
1,200.00
Vending income
5,406.30
Rental income
37,328.00
Total
47,474.30
Respondent conceded at trial that petitioners are entitled to a $ 24,944 deduction for expenses from their rental activities for 1986. Consequently, the amount of unreported income which remains at issue is $ 136,464.70.↩
11. Petitioners stipulated that they did not report $ 62,570.64 in income as follows: St. Matthews Church income
$ 3,640.00
Speedy Food Service, Inc., income
4,989.64
Vending income
6,071.00
Rental income
47,870.00
Total
62,570.64
Respondent conceded at trial that petitioners are entitled to a $ 40,550 deduction for expenses from their rental activities for 1987. Consequently, the amount of unreported income still at issue is $ 126,312.36.↩
12. The instant case is distinguishable from the "naked assessment" cases in which the Government has been required to show some predicate evidence supporting its determination before the notice will be presumed correct. See Portillo v. Commissioner, 932 F.2d 1128, 1133 (5th Cir. 1991), affg. in part, revg. in part and remanding T.C. Memo. 1990-68↩. The record shows that petitioner engaged in the cocaine business for 2 years. Various drug paraphernalia were found in his home and at his rental properties. Moreover, respondent has shown that substantial deposits were made into petitioners' bank accounts. Consequently, we see no need to look behind the notice of deficiency in the instant case to decide whether it carries its usual presumption of correctness.
13. The amounts shown as taxable income on the schedule of IRS transcripts of petitioner's income tax returns for taxable years 1967 through 1986 do not include income from petitioner's odd jobs while he was in the Navy, which petitioner concedes that he never reported as income. Nonetheless, petitioners have not established that petitioner's odd jobs could account for the $ 193,000 cash hoard.↩
14. The record includes documentation of a loan for $ 2,493.51 during 1980. Nonetheless, petitioner has not offered any supporting evidence other than his own testimony to establish that the $ 2,493.51 was deposited into one of petitioners' bank accounts.↩