T.C. Memo. 2008-271

UNITED STATES TAX COURT

DOMINICK J. VINCENTINI, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7166-03.                    Filed December 8, 2008.

<u>Robert J. Stientjes</u> and <u>Anthony Scott Gasaway</u>, for
petitioner.

<u>A. Gary Begun</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, <u>Judge</u>:  Respondent determined a deficiency of
$309,382 and a section 6662[1] accuracy-related penalty of
$61,876.40 with respect to petitioner's 1999 Federal income tax.

_____

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code, and all Rule references are to the Tax
Court Rules of Practice and Procedure.

After concessions,[2] the issues for decision are: (1) Whether petitioner may claim and carry back to 1999 a deduction for a theft loss that arose in 2001 or alternatively in 2002, and (2) whether petitioner is liable for the section 6662 accuracy-related penalty.

## FINDINGS OF FACT

Some of the facts have been stipulated. We incorporate the stipulation of facts into our findings by this reference. On the date the petition was filed, petitioner resided in Michigan.

From 1999 to 2001 petitioner was involved with an organization known as Anderson Ark & Associates (Anderson Ark). Anderson Ark operated an international fraud scheme that involved marketing various phoney investment programs.

Petitioner first became involved with Anderson Ark after listening to audiocassette tapes by Keith Anderson, founder of Anderson Ark, and attending an Anderson Ark conference in Costa Rica. In 1999 petitioner invested in two Anderson Ark programs. The first program was known as the Loan Four Program. The Loan Four Program, also known as the Factoring Program, involved a scheme where investors would transfer funds to Anderson Ark in

_____

[2]Petitioner concedes that he is not entitled to deduct the $907,470 partnership loss from Birdlane Marketing Venture reported on his 1999 Form 1040, U.S. Individual Income Tax Return. Petitioner also concedes that he is liable for the 10-percent additional tax under sec. 72(t) for the premature IRA distribution of $796,629 he received in 1999.

anticipation of large returns on their investments. The second program was known as the Complex Business Organization (CBO) or Look Back Program. Under the CBO Program, an investor would establish with an Anderson Ark entity a joint venture through which the investor would receive a partnership loss that would reduce the investor's tax liability.

In connection with his investment in the CBO Program, petitioner was referred to Gary Kuzel, who was involved with Anderson Ark and who represented himself to be a certified public accountant. Gary Kuzel prepared a package of documents (CBO package) explaining the CBO Program for petitioner that included an invoice for loan fees, a tax analysis report, a marketing proposal, a business plan, and "projections".

Petitioner, with the help of Gary Kuzel, took various steps to effect his investment in the CBO Program. Petitioner formed a partnership called Birdlane Marketing Venture (Birdlane) with an Anderson Ark entity, Macro Media Advertising, L.L.C. (Macro Media).[3] Birdlane executed[4] a promissory note for a $950,000 "loan" from La Maquina Blanca, S.A. (La Maquina Blanca), another Anderson Ark entity. The invoice included in the CBO package

---

[3]Petitioner had a 95-percent interest in Birdlane, and Macro Media had a 5-percent interest.

[4]Petitioner and Richard Grosnickle, on behalf of Macro Media, signed the promissory note.

showed that petitioner owed La Maquina Blanca $76,500[5] in various loan fees for initiating and processing the La Maquina Blanca loan.[6]  Under the CBO Program, Birdlane had to use the borrowed money as a so-called guaranteed payment to Macro Media, supposedly for services.  Because Birdlane had no income for 1999, Birdlane generated a net loss by deducting the "guaranteed payment" paid to Macro Media.  Birdlane allocated to petitioner most of its net loss generated by the "guaranteed payment".

Gary Kuzel prepared petitioner's 1999 Form 1040, U.S. Individual Income Tax Return (1999 return), on which petitioner reported a $907,470 partnership loss from Birdlane and a $796,629 IRA distribution.[7]

From 1999 to 2001 petitioner never received a profit from either Anderson Ark investment program.

In 2001 agents of the United States and Costa Rica raided Anderson Ark's Costa Rican offices, and agents of the United States also raided Anderson Ark's domestic offices.  Also in 2001 several Anderson Ark principals (Anderson Ark defendants) were arrested and indicted.  In 2002 the Anderson Ark defendants were

---

[5]The invoice showed total loan fees of $78,500, but petitioner had a $2,000 credit for a deposit.

[6]The evidence in the Anderson Ark criminal trial showed that the loans associated with the CBO Program were nonexistent and that Anderson Ark told its clients that the fees were necessary to process the nonexistent loans.

[7]Petitioner had not reached the age of 59-1/2 during 1999.

convicted in the U.S. District Court for the Eastern District of California (California District Court) on charges of money laundering and/or conspiracy to commit money laundering. See United States v. Anderson, 391 F.3d 970, 974 (9th Cir. 2004). Also in 2002 the same Anderson Ark defendants and two other Anderson Ark principals (hereafter collectively referred to as the Anderson Ark defendants) were indicted in the U.S. District Court for the Western District of Washington (Washington District Court).

On March 6, 2003, respondent sent petitioner a notice of deficiency disallowing the Birdlane partnership loss and determining a section 6662 accuracy-related penalty. Petitioner timely petitioned this Court. In his petition, petitioner asserted that respondent erred in disallowing the Birdlane partnership loss.[8]

In 2004 the Anderson Ark defendants were convicted in the Washington District Court on charges of conspiracy to defraud the United States, conspiracy to commit mail and wire fraud, aiding and assisting the filing of false income tax returns, mail fraud, and wire fraud. Keith and Wayne Anderson, two of the Anderson Ark defendants, were also convicted of international money laundering and conspiracy to commit money laundering.

---

[8]Petitioner now concedes that he is not entitled to the $907,470 Birdlane partnership loss reported on his 1999 return.

In 2005 the Washington District Court entered amended judgments in the criminal case. In the amended judgments the Washington District Court ordered the Anderson Ark defendants to pay restitution to petitioner and others in connection with their investments in the Anderson Ark programs. The restitution ordered with respect to petitioner was as follows:

|  | Restitution[1] | |
| Defendant | CBO Program | Loan Four Program |
| Keith Anderson | $76,500 | $435,000 |
| Wayne Anderson | 76,500 | 435,000 |
| Richard Marks | 76,500 | – |
| Karolyn Grosnickle | 76,500 | – |
| Pamela Moran | 76,500 | – |
| James Moran | 76,500 | – |

[1]The Anderson Ark defendants are jointly and severally liable for the restitution.

The Washington District Court also ordered several of the defendants to forfeit property to the United States. The Washington District Court ordered Keith[9] and Wayne Anderson to forfeit seven condominiums in Costa Rica, a residence in Hoodsport, Washington, and $28 million in cash. The Washington

---

[9]A complete copy of Keith Anderson's amended judgment in a criminal case was not included in the exhibits admitted into evidence. However, the complete amended judgment is available on the Public Access to Court Electronic Records (PACER) system and confirms that Keith Anderson was ordered to forfeit the same property as Wayne Anderson.

District Court also ordered Pamela and James Moran to forfeit property as set forth in a preliminary order of forfeiture.[10]

On April 14, 2006, while petitioner's case was pending before the Tax Court, respondent received petitioner's Form 1040X, Amended U.S. Individual Income Tax Return, for 1999.  On Form 4684, Casualties and Thefts, attached to the Form 1040X, petitioner claimed an $835,000 theft loss deduction for his involvement with Anderson Ark.[11]  Petitioner also attached to the Form 1040X a protective claim explaining his reasons for claiming the theft loss deduction.  In response, respondent sent petitioner's representative a letter explaining that petitioner's 1999 Federal income tax liability was pending before the Tax Court and that the Tax Court was the more appropriate place to raise his argument.  Respondent explained that the Form 1040X would be regarded only as an "information return".

On March 8, 2006, petitioner's motion for leave to amend petition was filed, and an amended petition was lodged.  In the motion petitioner asserted that he was entitled to a theft loss deduction under section 165(c)(3) for 1999.  On March 17, 2006, respondent filed a response to petitioner's motion.  On March 21,

---

[10]The record does not contain the preliminary order of forfeiture or otherwise show what property Pamela and James Moran were required to forfeit.

[11]Petitioner's description of the theft loss was "CASH $76,500 'LOAN FEE'" and "CASH $758,500 'LOAN 4 PROGRAM'".

2006, we denied petitioner's motion for leave to amend petition. On May 5, 2006, and September 18, 2006, petitioner filed motions to reconsider the denial of petitioner's motion to amend petition, and we denied both motions.

On May 23, 2007, we held a trial in Detroit, Michigan. At the trial petitioner again requested that the Court reconsider petitioner's motion to amend the pleadings to assert a theft loss deduction. Petitioner informed the Court that he did not need to introduce additional evidence at trial with regard to the theft loss deduction. The Court concluded that although this Court had previously denied petitioner's motion, petitioner would be barred from arguing for and receiving the benefit of a theft loss deduction that would carry back to 1999 if he could not assert the theft loss deduction issue in this case. The Court also found that respondent knew about the theft loss issue more than a year before trial. Respondent's only argument for denying petitioner's motion was that the Court had already ruled on petitioner's motion to amend petition.

Rule 41(a) provides that after the pleadings are closed, a party may amend a pleading only by leave of Court or by written consent of the adverse party, and leave shall be given freely when justice so requires. Because respondent was not prejudiced by our granting petitioner's motion to amend petition and this was petitioner's only opportunity to argue for the benefit of the

theft loss deduction for 1999, the Court concluded that justice was best served by exercising its discretion under Rule 41(a) to allow petitioner to amend his petition to raise the theft loss deduction issue. On June 1, 2007, the Court filed petitioner's amendment to petition.

OPINION

I. Jurisdiction

The Tax Court is a court of limited jurisdiction, and it may exercise its jurisdiction only to the extent authorized by Congress. Naftel v. Commissioner, 85 T.C. 527, 529 (1985). Section 7442 expressly provides that the Court and its divisions shall have such jurisdiction as is conferred on them by the Internal Revenue Code and by laws enacted after February 26, 1926.

Petitioner received a notice of deficiency, and he invoked our jurisdiction by timely filing a petition for redetermination of a deficiency under section 6213(a). Section 6214(a) grants us jurisdiction to redetermine the correct amount of a deficiency[12] and any additional amounts or any additions to tax.

Pursuant to section 6214(b), the Court, in redetermining a deficiency of income tax for any taxable year, shall consider

_____

[12]Sec. 6211(a) defines "deficiency" generally as the amount by which the tax imposed exceeds the sum of the amount of tax shown on the return and the amount of tax previously assessed over any rebates. White v. Commissioner, 95 T.C. 209, 213 (1990).

facts with relation to the taxes for other years as may be necessary to redetermine the correct amount of the deficiency. The Court, however, does not have jurisdiction to determine whether the tax for any other year has been overpaid or underpaid.  Id.

In response to respondent's notice of deficiency, petitioner timely filed a petition seeking redetermination of the deficiency for 1999 that resulted from the disallowance of the Birdlane partnership loss.  Although petitioner concedes that he is not entitled to the partnership loss for 1999, he asserts that he is entitled to a theft loss deduction for 2001 or 2002 that can be carried back to 1999.  Under section 6214(b) we may consider facts occurring in years other than 1999 to redetermine petitioner's tax liability for 1999.  Consequently, we have jurisdiction to determine whether petitioner is entitled to a theft loss deduction for 2001 or 2002.

## II.  Burden of Proof

A taxpayer generally has the burden of proving that the Commissioner's determination is in error.  Rule 142(a). Moreover, deductions are a matter of legislative grace, and a taxpayer must clearly demonstrate entitlement to the claimed deductions.  INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Segel v. Commissioner, 89 T.C. 816, 842 (1987).

The burden of proof shifts to the Commissioner if the taxpayer produces credible evidence with respect to any relevant factual issue and the taxpayer has complied with substantiation requirements, maintained all required records, and cooperated with reasonable requests by the Commissioner for witnesses, information, documents, meetings, and interviews. Sec. 7491(a). Petitioner concedes that section 7491(a) does not apply.[13] Consequently, petitioner bears the burden of proof herein.

III. Theft Loss Deduction

Petitioner asserts that he may claim a $511,500[14] theft loss deduction under section 165 for 2001 or alternatively for 2002 that may be carried back to 1999 in connection with his investment in the Anderson Ark programs.

Section 165 generally authorizes a deduction for losses resulting from theft for the year in which the taxpayer discovers the loss. Sec. 165(a), (c), (e). In order to claim a theft loss deduction, the taxpayer must prove (1) that a theft actually occurred under the law of the jurisdiction wherein the alleged

---

[13]Petitioner argues, however, that he is entitled to a shift of the burden of proof under caselaw predating the enactment of sec. 7491(a). Petitioner's argument is not convincing, and we reject it.

[14]Although petitioner claimed an $835,000 theft loss deduction on his Form 1040X, petitioner argued at trial and on brief that he is entitled to a $511,500 theft loss deduction. We shall under the circumstances consider petitioner to have abandoned his claim to a theft loss greater than $511,500.

loss occurred, <u>Monteleone v. Commissioner</u>, 34 T.C. 688, 692 (1960), (2) the amount of the loss, <u>Gerstell v. Commissioner</u>, 46 T.C. 161, 175 (1966), and (3) the date the taxpayer discovered the loss, sec. 165(e); <u>McKinley v. Commissioner</u>, 34 T.C. 59, 63 (1960); see also <u>River City Ranches #1 Ltd. v. Commissioner</u>, T.C. Memo. 2003-150, affd. in part, revd. in part and remanded 401 F.3d 1136 (9th Cir. 2005); <u>Yates v. Commissioner</u>, T.C. Memo. 1988-565.

A.    <u>Theft Occurrence and Loss Amount</u>

The term "theft" under section 165 has a general and broad meaning that includes any criminal appropriation of another's property, including theft by swindling, false pretenses, and other forms of guile.  <u>Edwards v. Bromberg</u>, 232 F.2d 107, 110 (5th Cir. 1956); see also sec. 1.165-8(d), Income Tax Regs. Generally the law of the jurisdiction where the taxpayer sustained the loss governs whether a theft has occurred under section 165.  <u>Bellis v. Commissioner</u>, 540 F.2d 448, 449 (9th Cir. 1976), affg. 61 T.C. 354 (1973).  A violation of a Federal criminal statute may also establish that a theft occurred for purposes of section 165.  <u>Nichols v. Commissioner</u>, 43 T.C. 842, 884-885 (1965); <u>River City Ranches #1 Ltd. v. Commissioner</u>, <u>supra</u>.

Petitioner argues that the doctrine of judicial estoppel precludes respondent from taking the position that petitioner was

not a victim of theft by the Anderson Ark defendants and that petitioner failed to substantiate the theft loss amount. Petitioner contends that the conviction of the Anderson Ark defendants and the Washington District Court's amended judgments in the criminal case ordering the defendants to pay petitioner restitution establish that petitioner was a victim of theft in the amount of $511,500.

The doctrine of judicial estoppel prevents a party from asserting in subsequent judicial proceedings a position contrary to the position the party had previously persuaded a court to accept. Huddleston v. Commissioner, 100 T.C. 17, 26 (1993). The Tax Court and the Court of Appeals for the Sixth Circuit, where appeal in this case would lie absent a stipulation to the contrary, have applied the doctrine of judicial estoppel in appropriate cases. See Lorillard Tobacco Co. v. Chester, Willcox & Saxbe, LLP, 546 F.3d 752, 757 (6th Cir. 2008); see also In re Cassidy, 892 F.2d 637 (7th Cir. 1990); Huddleston v. Commissioner, supra at 28-29. Judicial estoppel, however, must be "'applied with caution to avoid impinging on the truth-seeking function of the court because the doctrine precludes a contradictory position without examining the truth of either statement.'" Fazi v. Commissioner, 105 T.C. 436, 445-446 (1995) (quoting Teledyne Indus., Inc. v. NLRB, 911 F.2d 1214, 1218 (6th Cir. 1990)).

Judicial estoppel focuses on the relationship between a party and the courts and seeks to protect the integrity of the judicial process by preventing a party from successfully asserting one position before a court and then asserting a contradictory position before the same or another court merely because it is now in that party's favor to do so. Huddleston v. Commissioner, supra at 26. In order for judicial estoppel to apply, a court must actually have considered and accepted the position in an earlier court proceeding. Id. Acceptance by a court does not require that the party being estopped ultimately prevailed in the prior proceeding. Id. Acceptance by a court means only that the court accepted a specific position or argument asserted in the prior proceeding. Id.

Before applying judicial estoppel, we must decide whether respondent's position is inconsistent with the one the Government asserted in the Anderson Ark criminal case and whether the Washington District Court in the criminal case accepted the Government's position. See In re Cassidy, supra at 641; Huddleston v. Commissioner, supra at 27.

The Washington District Court entered amended judgments in a criminal case involving the Anderson Ark defendants that ordered certain defendants to pay petitioner restitution in connection with petitioner's investment in the Anderson Ark programs. Title 18 U.S.C. section 3663 (2006) authorizes a sentencing court to

order a defendant convicted of an offense under title 18 of the United States Code to make restitution to any victim of such offense. The sentencing court must support its restitution order against a defendant with a finding that the person to whom it awards restitution was a victim of the offense for which the defendant was convicted. 18 U.S.C. sec. 3663(a)(1)(A). Under 18 U.S.C. section 3663(a)(2), the term "victim" means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered. A court may award restitution to a victim not specifically named in the indictment as long as the indictment details a broad scheme involving victims in addition to those identified in the indictment. United States v. Liner, 435 F.3d 920, 926 (8th Cir. 2006). As support for an order of restitution under 18 U.S.C. section 3663, the court orders the probation officer to obtain and include in the presentence report, or a separate report, information sufficient for the court to exercise discretion in ordering restitution. 18 U.S.C. sec. 3664(a) (2006).

The Government took the position in the Anderson Ark criminal case that petitioner was a victim of fraud and was entitled to $511,500 of restitution for his loss related to the offenses for which the Anderson Ark defendants were convicted. The Washington District Court accepted that position. Pursuant to 18 U.S.C. section 3664(a), the Government, through a probation

officer, was required to obtain and report information sufficient for the court to order restitution to victims.  Although that report is not a part of the record in this case, we infer from the fact that the Washington District Court ordered restitution in favor of petitioner that the Government presented to the Washington District Court sufficient information to establish that petitioner was a victim of theft by the Anderson Ark defendants in the amount of $511,500.

Respondent now asserts that petitioner was not a victim of theft by the Anderson Ark defendants and that petitioner did not prove the amount of his loss.  Because respondent's position is inconsistent with the position asserted by the Government in the Anderson Ark criminal case, we conclude that the application of the doctrine of judicial estoppel is appropriate.  Applying the doctrine, we hold that respondent is precluded from arguing that petitioner was not a victim of theft by the Anderson Ark defendants in the amount of $511,500.

B.  Year of Discovery

A taxpayer may deduct a theft loss in the year in which the loss is sustained.  Sec. 165(a).  Any loss arising from theft is treated as sustained during the taxable year in which the taxpayer discovers the loss and in which the loss is evidenced by a "closed and completed" transaction.  Sec. 165(e); sec. 1.165-1(d)(1), Income Tax Regs.  Whether there is a closed and

completed transaction with respect to a theft loss depends on the taxpayer's prospect of recovering the loss. Sec. 1.165-1(d)(2)(i), Income Tax Regs. If in the year of discovery there exists a claim for reimbursement with respect to which there is a reasonable prospect of recovery, no portion of the loss with respect to which reimbursement may be received is sustained until the year in which it can be ascertained with reasonable certainty whether or not such reimbursement will be received. Sec. 1.165-1(d)(3), Income Tax Regs. Whether there is a reasonable prospect of recovery is a question of fact that must be determined by examining all facts and circumstances. Sec. 1.165-1(d)(2)(i), Income Tax Regs.

A reasonable prospect of recovery exists when the taxpayer has a bona fide claim for recoupment from third parties or otherwise and there is a substantial possibility that such claims will be decided in the taxpayer's favor. Ramsay Scarlett & Co. v. Commissioner, 61 T.C. 795, 811 (1974), affd. 521 F.2d 786 (4th Cir. 1975). Such prospect should not be viewed through the eyes of an "incorrigible optimist", and claims for recovery whose potential for success are remote or nebulous will not cause a postponement of the deduction. Id. We do not look at facts whose existence and production for use in later proceedings were not reasonably foreseeable as of the end of the year in which the loss was discovered. Id. The fact of a future settlement or a

favorable judicial action on the claim does not control our determination if we find that at the end of the year of discovery no reasonable prospect of recovery existed.[15]  Id. at 811-812.

Respondent concedes, and we find, that petitioner discovered the loss in 2001.[16]  However, petitioner must prove that it was reasonably certain as of the end of 2001 that he would not recover his loss.  See Jeppsen v. Commissioner, 128 F.3d 1410, 1418 (10th Cir. 1997), affg. T.C. Memo. 1995-342; Moravec v. Commissioner, 500 F.2d 1298, 1300 (7th Cir. 1974), affg. T.C. Memo. 1973-83.[17]  Petitioner is not entitled to a theft loss

---

[15]Although the test for determining whether the taxpayer had a reasonable prospect of recovery at the end of the year in which the taxpayer discovered the loss is an objective test, the Court may also consider the taxpayer's subjective belief at the end of such year.  Jeppsen v. Commissioner, 128 F.3d 1410, 1418 (10th Cir. 1997), affg. T.C. Memo. 1995-342.

[16]In February 2001 petitioner learned from a local radio station that six people were arrested on charges of money laundering and tax evasion in connection with Anderson Ark.  Gary Kuzel confirmed the arrests but informed petitioner that Keith Anderson had not been arrested.  Gary Kuzel also told petitioner to participate in the next scheduled conference call for an update.  During the month after the raid petitioner participated in conference calls with representatives of Anderson Ark and was assured that the money was safe and that Anderson Ark would be back operating in 30 days.  Sometime around April 2001 representatives of Anderson Ark stopped assuring petitioner that everything was okay, and the Anderson Ark representatives stopped participating in the conference calls.

[17]Absent a stipulation to the contrary, see sec. 7482(b)(2), this case is appealable to the Court of Appeals for the Sixth Circuit, see sec. 7482(b)(1)(A).  We have found no precedent in the Court of Appeals for the Sixth Circuit directly addressing the issue of whether and to what extent a court may consider

(continued...)

deduction if his prospect of recovery was merely unknown at the end of 2001.  See Jeppsen v. Commissioner, supra at 1418.

Petitioner argues that in 2001 he had no reasonable prospect of recovering his money from Anderson Ark.  Petitioner testified that in 2001, after learning about the arrests, he contacted Anderson Ark for advice on how to recover his money and was directed to fill out forms.  Petitioner claims that he filled out the forms as directed and submitted them by e-mail.  Petitioner also testified that in 2001 he participated in conference calls involving discussions about hiring attorneys to recover the money.  According to petitioner, he chose not to hire attorneys because he thought it was a waste of money and no one knew where the money was.

The only evidence offered by petitioner regarding his analysis of his prospect of recovery in 2001 was petitioner's uncorroborated testimony that he made some attempts to recover his money.[18]  Petitioner did not offer in evidence the forms that

---

[17](...continued)
events occurring after the year of discovery to determine whether a taxpayer had a reasonable prospect of recovery.  However, the Tax Court and at least one other Court of Appeals have addressed the issue.  See Jeppsen v. Commissioner, supra; Ramsay Scarlett & Co. v. Commissioner, 61 T.C. 795, 811 (1974), affd. 521 F.2d 786 (4th Cir. 1975).

[18]Even if we were to accept petitioner's testimony as credible, petitioner's belief that no one knew the whereabouts of the money does not establish that it was reasonably certain at the end of 2001 that he would not recover his money.

he supposedly filled out and submitted to Anderson Ark. Petitioner did not call as a witness at trial anyone who could testify as to his participation in the conference calls or any other attempts to recover his money. More importantly, petitioner did not testify that he believed at the end of 2001 that he had no reasonable prospect of recovering his money.

In contrast, the objective facts established by the record present a more refined picture. In 2001 several Anderson Ark defendants were arrested and indicted. We find that it was reasonably foreseeable at the end of 2001 that the Anderson Ark defendants would be convicted of various charges related to Anderson Ark's schemes. We also find that it was reasonable in 2001 to anticipate that the Washington District Court might order the Anderson Ark defendants, if convicted, to pay restitution to their victims, including petitioner, and to forfeit to the United States property that could be used to satisfy the restitution order. See 18 U.S.C. secs. 3663, 982 (2006).[19] Petitioner did not testify about the status of any recovery under the restitution order, nor did he offer any evidence about the effect of the substantial forfeitures on his right to restitution. This

--------

[19]Any seizure and disposition of property forfeited under 18 U.S.C. sec. 982 is governed by the provisions of 21 U.S.C. sec. 853. 18 U.S.C. sec. 982(b)(1). Tit. 21 U.S.C. sec. 853 authorizes the Attorney General, among other things, to restore forfeited property to victims and to take any other action to protect the rights of innocent persons which is in the interest of justice. 21 U.S.C. sec. 853(i)(1) (2006).

lack of evidence is particularly telling because one of the conditions of supervised release imposed on the Anderson Ark defendants after their release from imprisonment was satisfaction of their restitution obligation.

We conclude after a careful review of the record that petitioner has not established that it was reasonably certain at the end of 2001 that he would not recover his loss from Anderson Ark.[20] As we stated above, petitioner has the burden of establishing that no reasonable prospect of recovery existed at the end of 2001, and he did not do so. We therefore cannot conclude that at the end of 2001 petitioner had no reasonable prospect of recovering his loss from Anderson Ark.[21]

We hold that petitioner has failed to prove that he is entitled to a theft loss deduction in 2001 that can be carried back to 1999.[22]

---

[20]Although we evaluate whether or not a reasonable prospect of recovery existed at the end of the year of discovery, we note that petitioner reported the theft loss deduction for the first time in 2006 when he sent respondent a Form 1040X, Amended U.S. Individual Income Tax Return, for 1999. At that time, the Washington District Court had already issued the amended judgments in a criminal case ordering the Anderson Ark defendants to pay petitioner $511,500 in restitution.

[21]We also conclude that petitioner did not establish that he had no reasonable prospect of recovering his losses in 2002 for the same reasons we stated with regard to 2001.

[22]Because we conclude that petitioner is not entitled to a theft loss deduction in 2001 or 2002, we need not address respondent's public policy argument.

IV. Section 6662 Penalty

Respondent contends that petitioner is liable for the accuracy-related penalty under section 6662 in connection with the Birdlane partnership loss reported on his 1999 return. Respondent asserts that petitioner is liable for the section 6662 penalty on alternative grounds: (1) The underpayment resulting from the disallowed partnership loss was attributable to negligence or disregard of rules or regulations within the meaning of section 6662(b)(1), or (2) there was a substantial understatement of income tax within the meaning of section 6662(b)(2).

Section 6662(a) and (b)(1) authorizes the Commissioner to impose a penalty in an amount equal to 20 percent of the underpayment attributable to negligence or disregard of the rules or regulations. Negligence is defined as any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code. Sec. 6662(c); see also Neely v. Commissioner, 85 T.C. 934, 947 (1985) (negligence is lack of due care or failure to do what a reasonable prudent person would do under the circumstances). Negligence is strongly indicated where a taxpayer fails to make a reasonable attempt to ascertain the correctness of a deduction, credit, or exclusion on a return which would seem to a reasonable and prudent person to be "too

good to be true" under the circumstances.  Sec. 1.6662-3(b)(1)(ii), Income Tax Regs.

Section 6662(a) and (b)(2) also authorizes the Commissioner to impose a 20-percent penalty if there is a substantial understatement of income tax.  A substantial understatement of income tax with respect to an individual taxpayer exists if the amount of the understatement for the taxable year exceeds 10 percent of the tax required to be shown on the return for the taxable year or $5,000, whichever is greater.  Sec. 6662(d)(1)(A).

Respondent bears the initial burden of production with respect to petitioner's liability for the section 6662 penalty, in that respondent must first produce sufficient evidence to establish that the imposition of the section 6662 penalty is appropriate.  Sec. 7491(c).  If respondent satisfies his initial burden of production, the burden of producing evidence to refute respondent's evidence and to establish that petitioner is not liable for the section 6662 penalty shifts to petitioner.  See Higbee v. Commissioner, 116 T.C. 438, 447 (2001).

Respondent has carried his burden of production because petitioner concedes that he is not entitled to the Birdlane partnership loss reported on his 1999 return.  See, e.g., Rogers v. Commissioner, T.C. Memo. 2005-248.  Respondent also met his burden by showing that petitioner substantially understated his

1999 Federal income tax. Because respondent has met his burden of production, petitioner must come forward with sufficient evidence to persuade the Court that respondent's determination is incorrect. See Higbee v. Commissioner, supra at 446-447. Petitioner also bears the burden of producing evidence to demonstrate reasonable cause under section 6664(c)(1). See id.

Petitioner contends that he believed he was entitled to claim the partnership loss and was misled by Anderson Ark about the legitimacy of the CBO Program. Petitioner asserts that he adequately researched the CBO Program before deciding to invest in it. However, the record does not contain any credible evidence that petitioner researched the legitimacy of the Anderson Ark programs or that the steps he took to learn about Anderson Ark represented an adequate investigation into the Anderson Ark organization and the programs that it was selling. Although petitioner testified that he consulted his financial planner about the CBO Program, petitioner did not call his financial planner to testify at trial and did not otherwise introduce any corroborating evidence establishing that the conversation occurred or the substance of the conversation. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986) (uncorroborated testimony of a party may be disregarded as self-serving and unworthy of belief). Moreover, petitioner did not introduce any evidence that he sought outside advice or conducted any

independent research of Anderson Ark, the Anderson Ark programs in which he invested, or the Birdlane partnership loss that he deducted.  On this meager record, we cannot conclude that petitioner made a reasonable attempt to ascertain the correctness of the Birdlane partnership loss.

Section 6664(c)(1) provides that no penalty shall be imposed under section 6662 with respect to any portion of an underpayment if it is shown that there was reasonable cause for that portion and the taxpayer acted in good faith with respect to that portion.  We determine reasonable cause and good faith on a case-by-case basis, taking into account all pertinent facts and circumstances.  Sec. 1.6664-4(b)(1), Income Tax Regs.  The most important factor is the extent of the taxpayer's effort to assess his proper tax liability.  Id.

A taxpayer's reasonable reliance on the advice of an independent professional adviser as to the tax treatment of an item may demonstrate reasonable cause.  Neonatology Associates, P.A. v. Commissioner, 115 T.C. 43, 99 (2000), affd. 299 F.3d 221 (3d Cir. 2002); sec. 1.6664-4(b)(1), Income Tax Regs.  To successfully claim reasonable reliance on a professional adviser, the taxpayer must show that (1) the adviser was a competent professional who had sufficient expertise to justify the taxpayer's reliance on him, (2) the taxpayer provided necessary and accurate information to the adviser, and (3) the taxpayer

actually relied in good faith on the adviser's judgment. Neonatology Associates, P.A. v. Commissioner, supra at 99.

Petitioner argues that he had reasonable cause for and acted in good faith with regard to the underpayment attributable to the partnership loss reported on his 1999 return because he relied on the advice of Gary Kuzel concerning the deduction of the Birdlane partnership loss. We find, however, that petitioner's reliance on Gary Kuzel was not reasonable. Anderson Ark referred petitioner to Gary Kuzel to help petitioner implement the steps necessary to effect his investment in the CBO Program and ultimately to receive the income tax benefits of the Birdlane partnership loss. Petitioner knew that Gary Kuzel was involved with Anderson Ark, and he testified that Gary Kuzel's services were "part of the deal" with Anderson Ark. We have held that reliance on the advice of an accountant who was referred to a taxpayer by the tax promoter promoting the transaction was not reasonable. See Rogers v. Commissioner, supra. Petitioner ignored Gary Kuzel's ties to Anderson Ark and never researched Gary Kuzel's background. Petitioner took no meaningful action to verify that Gary Kuzel had sufficient expertise or was sufficiently independent to justify petitioner's reliance on him. Consequently, we conclude that petitioner did not reasonably rely in good faith on Gary Kuzel's advice in claiming the Birdlane partnership loss.

We hold that petitioner is liable for the section 6662 accuracy-related penalty for the understatement of tax attributable to the disallowance of the Birdlane partnership loss reported on his 1999 return.

<u>Decision will be entered for respondent</u>.