T.C. Memo. 2009-255

UNITED STATES TAX COURT


DOMINICK J. VINCENTINI, Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent[*]


Docket No. 7166-03.                  Filed November 9, 2009.


$\underline{\text{Robert J. Stientjes}}$ and $\underline{\text{Anthony Scott Gasaway}}$, for
petitioner.

$\underline{\text{A. Gary Begun}}$, for respondent.


SUPPLEMENTAL MEMORANDUM OPINION


MARVEL, $\underline{\text{Judge}}$:  This case is before the Court on
petitioner's motions to vacate decision pursuant to Rule 162[1] and

[*]This opinion supplements our previously filed opinion in
$\underline{\text{Vincentini v. Commissioner}}$, T.C. Memo. 2008-271.

[1]Unless otherwise indicated, all Rule references are to the
                                        (continued...)

to reconsider our Memorandum Opinion in <u>Vincentini v.</u> <u>Commissioner</u>, T.C. Memo. 2008-271 (Vincentini I), pursuant to Rule 161.  We granted petitioner's motion to vacate decision in order to consider and rule on petitioner's motion to reconsider our Memorandum Opinion.  For the reasons that follow, we shall deny petitioner's motion to reconsider.

<u>Background</u>

In Vincentini I we made findings of fact, which we incorporate herein by reference.  For convenience and clarity, we repeat below the facts relevant to our disposition of petitioner's motion for reconsideration, and we supplement those facts as appropriate to provide a complete background statement.

From 1999 to 2001 petitioner was an investor in Anderson Ark & Associates (Anderson Ark), an international fraud scheme that marketed various phoney investment programs.  In 2001 agents of the Costa Rican and U.S. Governments raided Anderson Ark's offices in Costa Rica and the United States and arrested and indicted several Anderson Ark principals (Anderson Ark defendants).  In 2004 the Anderson Ark defendants were convicted in the U.S. District Court for the Western District of Washington (Washington District Court) of conspiracy to defraud the United

---

[1](...continued)
Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code for the relevant year.

States, conspiracy to commit mail and wire fraud, aiding and assisting the filing of false income tax returns, mail fraud, and wire fraud.  Two of the Anderson Ark defendants, Keith and Wayne Anderson, also were convicted of international money laundering and conspiracy to commit money laundering.  The Anderson Ark defendants were each sentenced to as many as 20 years in prison.

In 2005 the Washington District Court entered amended judgments in the criminal case.  In the amended judgments, the Washington District Court ordered the Anderson Ark defendants to pay restitution to petitioner and other investors.  The restitution order with respect to petitioner was as follows:

| | Restitution[1] | |
| Defendant | CBO Program | Loan Four Program |
| Keith Anderson | $76,500 | $435,000 |
| Wayne Anderson | 76,500 | 435,000 |
| Richard Marks | 76,500 | - |
| Karolyn Grosnickle | 76,500 | - |
| Pamela Moran | 76,500 | - |
| James Moran | 76,500 | - |

[1]The Anderson Ark defendants are jointly and severally liable.

The Washington District Court ordered Keith and Wayne Anderson to forfeit seven condominiums in Costa Rica, a residence in Hoodsport, Washington, and $28 million in cash.  The Washington District Court also ordered Pamela and James Moran to forfeit property as set forth in a preliminary order of forfeiture.

On April 14, 2006, while petitioner's case was pending before this Court, petitioner submitted to the Internal Revenue Service (IRS) a Form 1040X, Amended U.S. Individual Income Tax Return, for 1999.  On Form 4684, Casualties and Thefts, which was attached to the Form 1040X, petitioner claimed for the first time an $835,000 theft loss deduction related to his involvement with Anderson Ark,[2] and he asserted that he sustained the theft loss in 2001 or 2002 and could carry it back to 1999.  Petitioner also filed a motion for leave to amend his petition to assert his claim to a theft loss deduction.  We ultimately granted petitioner's motion to amend.

At trial petitioner testified that he invested in two Anderson Ark programs, but he did not introduce any documentation of his investments.  Petitioner also testified that in the spring of 2001, after learning that Government agents had raided Anderson Ark's headquarters and arrested the Anderson Ark defendants, he filled out forms seeking recovery of his investments and participated in a conference call to discuss with other investors whether it was worthwhile to retain an attorney to try to recover the money he had invested with Anderson Ark.  Petitioner testified that he ultimately decided not to hire an

_____

[2]Petitioner argued at trial and on brief that he was entitled to a $511,500 theft loss deduction.  In Vincentini I, we concluded that petitioner had abandoned his claim to a theft loss deduction greater than $511,500.

attorney because no one knew where the money was and he believed hiring an attorney would be a waste of money.  Although petitioner did not assert a claim for a theft loss deduction until after the Anderson Ark defendants had been convicted, sentenced, and ordered to pay restitution and forfeit assets, he did not introduce any evidence regarding the likelihood that he would receive restitution in accordance with the amended judgments entered by the Washington District Court.

## Discussion

### I.   Standard of Review

The purpose of reconsideration under Rule 161 is to correct substantial errors of fact or law and to allow the introduction of newly discovered evidence that the moving party could not have introduced, by the exercise of due diligence, in the prior proceeding.  Estate of Quick v. Commissioner, 110 T.C. 440, 441 (1998), supplementing 110 T.C. 172 (1998); Goettee v. Commissioner, T.C. Memo. 2004-9, supplementing T.C. Memo. 2003-43, affd. 192 Fed. Appx. 212 (4th Cir. 2006).  We have discretion to grant a motion for reconsideration and will not do so unless the moving party shows unusual circumstances or substantial error.  Estate of Quick v. Commissioner, supra at 441; Vaughn v. Commissioner, 87 T.C. 164, 166-167 (1986), modifying 81 T.C. 893 (1983).  "Reconsideration is not the appropriate forum for rehashing previously rejected legal arguments or tendering new

legal theories to reach the end result desired by the moving party."  Estate of Quick v. Commissioner, supra at 441-442.

## II.  Section 165 Theft Loss

Section 165 generally permits a taxpayer to deduct uncompensated losses resulting from theft in the year in which the taxpayer discovers the loss.  Sec. 165(a), (c), (e).  To qualify for a theft loss deduction, a taxpayer must prove:  (1) The occurrence of a theft under the law of the jurisdiction in which the claimed loss occurred, Monteleone v. Commissioner, 34 T.C. 688, 692 (1960); (2) the amount of the theft loss, Gerstell v. Commissioner, 46 T.C. 161, 175 (1966); and (3) the date the taxpayer discovered the theft loss, sec. 165(e); McKinley v. Commissioner, 34 T.C. 59, 63 (1960); see also River City Ranches #1, Ltd. v. Commissioner, T.C. Memo. 2003-150, affd. in part, revd. in part and remanded 401 F.3d 1136 (9th Cir. 2005); Yates v. Commissioner, T.C. Memo. 1988-565.

## III. Reasonable Prospect of Recovery

A taxpayer may deduct a theft loss only for the year the loss is sustained.  Sec. 165(a).  A theft loss is treated as sustained during the taxable year in which the loss occurs, as evidenced by a closed and completed transaction.  Sec. 1.165-1(d)(1), Income Tax Regs.; see also Garcia v. Commissioner, 96 T.C. 792, 795 (1991).  Whether there is a closed and completed transaction depends on the taxpayer's prospect of recovering the

loss.  Jeppsen v. Commissioner, T.C. Memo. 1995-342, affd. 128 F.3d 1410 (10th Cir. 1997); sec. 1.165-1(d)(2)(i), Income Tax Regs.  If in the year of discovery there exists a claim for reimbursement with respect to which there is a reasonable prospect of recovery, no portion of the loss with respect to which reimbursement may be received is sustained until the year in which it can be ascertained with reasonable certainty whether such reimbursement will be received.  Jeppsen v. Commissioner, supra; sec. 1.165-1(d)(3), Income Tax Regs.  Stated differently, a reasonable prospect of recovery will postpone the theft loss deduction until such time as the prospect no longer exists.  See sec. 1.165-1(d)(3), Income Tax Regs.

In Vincentini I we concluded petitioner had suffered a theft loss of $511,500 and that the loss was discovered in 2001.  We denied petitioner's theft loss deduction, however, because petitioner did not prove that he had no reasonable prospect of recovery as of the end of 2001 or 2002.  As we stated in Vincentini I:

> The only evidence offered by petitioner regarding his analysis of his prospect of recovery in 2001 was petitioner's uncorroborated testimony that he made some attempts to recover his money.  * * *
>
> In contrast, the objective facts established by the record present a more refined picture.  In 2001 several Anderson Ark defendants were arrested and indicted.  We find that it was reasonably foreseeable at the end of 2001 that the Anderson Ark defendants would be convicted of various charges related to Anderson Ark's schemes.  We also find that it was

reasonable in 2001 to anticipate that the Washington District Court might order the Anderson Ark defendants, if convicted, to pay restitution to their victims, including petitioner, and to forfeit to the United States property that could be used to satisfy the restitution order.  * * *  Petitioner did not testify about the status of any recovery under the restitution order, nor did he offer any evidence about the effect of the substantial forfeitures on his right to restitution. This lack of evidence is particularly telling because one of the conditions of supervised release imposed on the Anderson Ark defendants after their release from imprisonment was satisfaction of their restitution obligation.

Petitioner disputes our finding that he had a reasonable prospect of recovery as of the end of 2001 or, in the alternative, 2002.  In his motion for reconsideration, petitioner argues that:  (1) The likelihood of recovery was not 40 percent or greater, (2) this Court's reliance on the Washington District Court's restitution order was misplaced, and (3) this Court's reliance on petitioner's failure to provide testimony regarding any receipt of funds under the restitution order was improper.

A. <u>Petitioner's Evidence Insufficient for This Court To Conclude His Prospect of Recovery Was Not Reasonable</u>

Whether a reasonable prospect of recovery exists is a question of fact that must be determined by examining all facts and circumstances.  Sec. 1.165-1(d)(2)(i), Income Tax Regs.  A reasonable prospect of recovery exists when the taxpayer has a bona fide claim for recoupment from third parties or otherwise and there is a substantial possibility such claims will be decided in the taxpayer's favor.  <u>Ramsay Scarlett & Co. v.</u>

<u>Commissioner</u>, 61 T.C. 795, 811 (1974), affd. 521 F.2d 786 (4th Cir. 1975). Conversely, a reasonable prospect of recovery does not exist where there is evidence that the person against whom recovery is sought has insufficient assets to satisfy the claim. <u>Mann v. Commissioner</u>, T.C. Memo. 1981-684 (theft loss allowed where taxpayer had no reasonable prospect of recovery but nevertheless filed lawsuit out of anger against former employee who had embezzled funds). If a taxpayer's prospect of recovery is simply unknowable as of the end of the year for which the deduction is claimed, the taxpayer is not entitled to a theft loss deduction in that year. <u>Jeppsen v. Commissioner</u>, <u>supra</u>.

The test for determining whether a reasonable prospect of recovery exists is primarily an objective one. <u>Ramsay Scarlett & Co. v. Commissioner</u>, <u>supra</u> at 811. A taxpayer's subjective belief that there was no reasonable prospect of recovery is entitled to some weight, but it is not the sole or even a controlling factor. <u>Id.</u> at 812-813.

Although petitioner's argument is not entirely clear, petitioner appears to contend that we erred in analyzing whether petitioner had a reasonable prospect of recovery. Citing only one case, <u>Parmelee Transp. Co. v. United States</u>, 173 Ct. Cl. 139, 154, 351 F.2d 619, 628 (1965), petitioner states that "The courts hold that in order for a taxpayer to have a reasonable prospect of recovery, the chance of recovery should be 40 percent or

better." Petitioner asserts that he did not have a reasonable prospect of recovery because he did not have a 40-percent-or-better chance of recovering his theft loss under the amended judgments.

We reject petitioner's argument for several reasons. As an initial matter, petitioner has failed to convince us that "the courts" have adopted any uniform standard for quantifying whether a taxpayer's prospect of recovery is reasonable.[3] Moreover, even

---

[3]In Parmelee Transp. Co. v. United States, 173 Ct. Cl. 139, 156, 351 F.2d 619, 629 (1965), the Court of Claims held that the plaintiff-taxpayer was not entitled to an ordinary loss deduction where the plaintiff had an antitrust lawsuit pending with respect to the claimed loss, and the outcome of the lawsuit was unknown as of the date the plaintiff deducted the loss. The Court of Claims explained that the mere existence of a pending claim does not necessarily establish that a taxpayer has a reasonable prospect of recovery:

> There are many reasons for initiating lawsuits. In this case, taxpayer's antitrust claim for treble damages exceeded 19 million dollars. Where the stakes are so high, a suit may be "100% justified" even though the probability of recovery is minuscule. In short, although we offer no litmus paper test of "reasonable prospect of recovery," we note that the inquiry should be directed to the probability of recovery as opposed to the mere possibility. Analyzing the rule in percentage terms, we would consider a 40 to 50 percent or better chance of recovery as being "reasonable". A lawsuit might well be justified by a 10 percent chance.

Id. at 154, 351 F.2d at 628. Parmelee is distinguishable in that the Court of Claims was considering the existence of a reasonable prospect of recovery in the context of ongoing litigation regarding the taxpayer's loss, whereas in this case the Washington District Court has already ordered restitution with respect to petitioner's theft loss. Moreover, the Court of Claims stated that it was offering no litmus test of a taxpayer's

(continued...)

if we were to accept petitioner's contention that a reasonable prospect of recovery means a chance of recovery that is 40 percent or better, petitioner did not satisfy his burden of proving that his prospect for recovery under the restitution portion of the amended judgments was less than 40 percent or that his prospect of recovery was not reasonable either as of 2001, the year of discovery, or in the alternative in 2006, the year in which petitioner first asserted his claim to a theft loss deduction.

Petitioner offered no evidence whatsoever regarding the status of any restitution payments, the availability of funds from the substantial forfeitures that the Washington District Court had ordered, or whether petitioner had received or would receive any restitution; nor did petitioner introduce any credible evidence that the Anderson Ark defendants were judgment proof, that they had insufficient assets to satisfy the restitution orders, that the forfeitures did not occur as ordered, or that it was otherwise improbable that he would

---

³(...continued)
reasonable prospect of recovery.  We are aware of only one other case that suggests a "reasonable prospect of recovery" necessarily requires a 40- to 50-percent chance of recovery.  See Sollitt Constr. Co. v. United States, 1 Cl. Ct. 333, 345 (1983). While Parmelee may support petitioner's argument that the Court of Claims established a standard for deciding when pending litigation may constitute a reasonable prospect for recovery, it does not support petitioner's generalization that "the courts" generally and unanimously have adopted such a standard.

receive restitution pursuant to the restitution orders. Petitioner's only evidence on this point at trial was his testimony, which was vague, self-serving, unreliable, and completely unsupported by documentation.

Although petitioner attempts to inject a modicum of information into the record through representations in the motion for reconsideration, a motion for reconsideration is not the mechanism to rectify a failure of proof at trial. Estate of Quick v. Commissioner, 110 T.C. at 441-442. Because petitioner failed to prove that he did not have a reasonable prospect of recovery in either 2001 or in 2006 when he claimed the theft loss deduction for the first time, we properly held that petitioner was not entitled to a theft loss deduction for 2001 that could be carried back to 1999.

B.    Our Reliance on the Washington District Court's Restitution Order Not Misplaced

Petitioner argues that our reliance on the Washington District Court's restitution order was not justified because "The potential to receive restitution payments in 20 years is not a reasonable prospect of recovery within the meaning of [section 1.165-1(d), Income Tax Regs.]". Petitioner does not cite any authority to support his assertion that the potential to receive restitution at a future date is not a reasonable prospect of recovery, nor are we aware of any authority holding that a taxpayer with a valid claim for restitution does not have a

reasonable prospect of recovery merely because the taxpayer may be unable to collect on the claim for some time.

Even if we were to accept petitioner's argument that a right to receive restitution payments in 20 years is not a reasonable prospect of recovery, the argument would still fail because petitioner failed to prove that restitution would be delayed for 20 years or that it would not be made at all. As we stated in Vincentini I, the Washington District Court ordered various defendants to forfeit substantial assets, which may be sold or otherwise converted to cash to fund restitution payments. Petitioner knew or should have known of the forfeiture and restitution provisions of the amended judgment when he submitted his 1999 Form 1040X to the IRS in 2006. He was certainly aware of the amended judgments before trial, and he could have obtained and offered evidence regarding the status of the asset forfeitures and the payment of restitution. He did not do so.

C. Our Reliance on Petitioner's Failure To Provide Testimony Regarding Any Receipt of Funds Under the Restitution Order Not Improper

Petitioner argues that this Court improperly relied on petitioner's failure to provide testimony regarding any receipt of funds under the restitution order. We reject petitioner's argument for several reasons. First, petitioner had the burden of proof at trial, see Rule 142(a), and evidence that petitioner had not received any funds under the restitution order was

readily available at the time of trial.  Petitioner did not offer
it. Second, even if petitioner had offered evidence that he had
not  received any payment under the restitution order as of the
date of trial, such evidence would not have been sufficient to
prove that petitioner had no reasonable prospect of recovery.[4]

The amended judgments containing the restitution and
forfeiture orders were admitted into evidence as stipulated
Exhibits 48-R through 51-R, 54-R, and 55-R.  Petitioner cannot
now complain that we erred in considering the amended judgments
in analyzing whether he satisfied his burden of proof.

IV.  Conclusion

Petitioner has failed to demonstrate any unusual
circumstances or substantial errors of fact or law that would
justify the granting of the instant motion for reconsideration.
Accordingly, we shall deny petitioner's motion for
reconsideration.

We have considered all remaining arguments made by the
parties and, to the extent not discussed above, find those
arguments to be irrelevant, moot, or without merit.

---

[4]Petitioner did not introduce any evidence that, for
example, the Anderson Ark defendants were judgment proof or that
the defendants had insufficient assets to make the required
restitution payments.  See, e.g., Mann v. Commissioner, T.C.
Memo. 1981-684.

To reflect the foregoing,

<u>An appropriate order and decision will be entered</u>.