Leonard Charles EKMAN;  Kaye Layne Ekman, Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

No. 98–1576.

United States Court of Appeals, Sixth Circuit.

Argued April 22, 1999.

Decided June 4, 1999.

Paul Croushore, JD, LLM (argued and briefed), Cincinnati, OH, for Petitioners-Appellants.

William S. Estabrook (briefed), Joel L. McElvain (argued), U.S. Department of Justice, Appellate Section, Tax Division, Jeffrey R. Meyer (briefed), Tax Division, Department of Justice, Washington, DC, for Respondent-Appellee.

Before: GUY, SUHRHEINRICH, and GILMAN, Circuit Judges.

## OPINION

RALPH B. GUY, Jr., Circuit Judge.

Taxpayers Leonard Charles Ekman and Kaye Layne Ekman appeal from the United States Tax Court's decision on their petition for redetermination of the tax deficiencies in their joint income tax for the year 1991 set forth in a notice of deficiency issued by the Commissioner of Internal Revenue. The taxpayers argue on appeal that the tax court erred (1) in finding that the cost of a Porsche automobile engine purchased by Leonard Ekman was not a deductible research or experimental expense under 26 U.S.C. § 174 and Treas. Reg. § 1.174–2(b); 26 C.F.R. § 1.174–2(b); and (2) in denying the taxpayers' petition for litigation costs under 26 U.S.C. § 7430 on the grounds that the Commissioner's position was substantially justified. After review of the record and the arguments on appeal, we affirm in all respects.

## I.

The parties submitted a stipulation of certain facts and exhibits to the tax court. Between the stipulations, the tax court's decision and the parties' briefs, there do not appear to be significant disputed issues of fact. The tax court succinctly set forth the following pertinent facts.

Petitioner [Leonard Ekman] is a graduate of the U.S. Air Force Academy and retired after a career in the Air Force. He possesses dual degrees from the Air Force Academy in aeronautical engineering and political science. He also has advanced degrees from other institutions of higher learning. While petitioner was on active duty in the Air Force, he developed an interest in the Porsche automobile, which is manufactured in Germany. Although Porsche produced several types of engines, petitioner was particularly interested in the Porsche 928 S4 engine. From the evidence adduced at trial, it appears that this engine was designed to run comfortably at speeds of 130 to 150 miles per hour; however, the engine was not designed for racing. Petitioner became interested in developing modifications to the engine that would increase the engine's horsepower so that the car would be adaptable for racing and still could be used as a regular street vehicle. Petitioner felt that there was a niche in the market for this type of vehicle, although the manufacturer, Porsche, was not interested in producing such an engine for the reason that Porsche offered other types of engines for racing purposes. The Porsche 928 S4 engine is a V–8 engine, while other engines Porsche produces are V–6.

. . . .

Petitioner began working on his concept around 1984, initially on a Porsche 928 S4 two-valve engine. In late 1990, petitioner decided to intensify his efforts to develop the engine modifications. After consultations with other mechanics who were familiar with the Porsche en-

gine, it was suggested to petitioner that his concept would be more suitable for a four-valve Porsche engine rather than a two-valve engine.

In March 1991, petitioner purchased a damaged Porsche 928 S4, four-valve engine, on which he would make the modifications to enhance the engine. Later, in 1991, petitioner enlisted other individuals to participate in the venture. Under the agreement with his partners, the enhancement of the engine remained an activity of petitioner, and his partners were to develop and produce the other parts and components that would complement the enhanced engine. The damaged engine petitioner purchased cost $7,000. Petitioner made the necessary repairs to the engine and then made the necessary modifications to enhance the engine. There is no dispute that petitioner reached his objective of increasing the engine's horsepower. In arriving at that goal, several other modifications were necessary along the way that petitioner had apparently not anticipated.... In addition, petitioner purchased two used Porsche automobiles. They provided the parts and the body into which the $7,000 engine was placed after the engine enhancements had been completed.

The $7,000 engine that petitioner modified was not intended to be sold but, rather, was intended to be used for purposes of making the modifications to see if such modifications would work. The enhanced engine was not designed for, nor was it intended to be, a finished product but, rather, was used solely for purposes of making the modifications that, if successful, would be implemented on other 928 S4 Porsche engines and marketed.

The Commissioner's statutory notices of deficiency issued November 4, 1994, as-

serted an income tax deficiency of $2,929 for the tax year 1991 resulting in part from the disallowance of over $18,000 in itemized deductions from Schedule C (profit or loss from a business). The Commissioner averred that expenses claimed for cam development, piston development, engine block development, cylinder head development, and the damaged Porsche engine were not deductible because they were capital expenditures which must be depreciated when placed in service. Before trial, the Commissioner agreed to allow all of the disputed Schedule C expenses, except for the $7,000 claimed for the cost of the engine.

After a one-day trial concerning the tax treatment of this expenditure, the tax court determined in a written memorandum opinion that the cost of the engine was not deductible under 26 U.S.C. § 174(a) or § 179, but was depreciable.[1] In a separate order, the tax court denied the taxpayers' motion for an award of reasonable litigation costs, finding that the position of the Commissioner was "substantially justified." On February 4, 1998, the tax court accordingly entered its decision declaring a deficiency in income tax of $307 for the tax year 1991 and denying the request for litigation costs. The taxpayers filed this appeal.

## II.

### A. Deficiency

The Commissioner's deficiency determinations are presumed correct and the taxpayer bears the burden of proving otherwise. *See Kearns v. Commissioner,* 979 F.2d 1176, 1178 (6th Cir.1992); *Smith v. Commissioner,* 926 F.2d 1470, 1474 (6th Cir.1991). We review the tax court's findings of fact for clear error and its application of law de novo. Deductions are a matter of legislative grace, and the taxpayer must satisfy the specific statutory

---

1. Taxpayers do not challenge the tax court's finding that the cost of the engine was not deductible under § 179 because they had failed to elect such a deduction on the tax return.

requirements claimed to reduce a tax liability. *See New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348 (1934).

■ Under Internal Revenue Code § 174(a), "[a] taxpayer may treat research or experimental expenditures which are paid or incurred by him during the taxable year in connection with his trade or business as expenses which are not chargeable to capital account. The expenditures so treated shall be allowed as a deduction." 26 U.S.C. § 174(a). This section further provides in subpart (c), however, that:

This section shall not apply to any expenditure for the acquisition or improvement of land, or for the *acquisition or improvement of property* to be used in connection with the research or experimentation *and of a character which is subject to the allowance under section 167* (relating to allowance for depreciation, etc.) or section 611 (relating to allowance for depletion); but for purposes of this section, allowances under section 167, and allowances under section 611, shall be considered as expenditures.

26 U.S.C. § 174(c) (emphasis added). In general, § 167 provides that "[t]here shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—(1) of property used in the trade or business, or (2) of property held for the production of income." 26 U.S.C. § 167(a).

The regulations expand on these provisions stating in part that "[t]he depreciation allowance in the case of tangible property applies only to that part of the property which is subject to wear and tear, to decay or decline from natural causes, to exhaustion, and to obsolescence." Treas. Reg. § 1.167(a)-2; 26 C.F.R. § 1.167(a)-2. With respect to the deduction under § 174, the regulations provide in Treas. Reg. § 1.174-2(b), in pertinent part, as follows:

(2) Expenditures for research or experimentation which result, as an end product of the research or experimentation, in depreciable property to be used in the taxpayer's trade or business may, subject to the limitations of subparagraph (4) of this paragraph, be allowable as a current expense deduction under section 174(a) . . . .

. . . .

(4) The deductions referred to in subparagraphs (2) and (3) of this paragraph for expenditures in connection with the acquisition or production of depreciable property to be used in the taxpayer's trade or business are limited to amounts expended for research or experimentation. For the purpose of the preceding sentence, amounts expended for research or experimentation do not include the costs of the component materials of the depreciable property, the costs of labor or other elements involved in its construction and installation, or costs attributable to the acquisition or improvement of the property.[2]

The tax court concluded that the expenditure for the engine was not deductible under § 174(a), finding that the "payment of $7,000 for the Porsche engine represented the cost of an asset that was of a character subject to an allowance for depreciation and that was used in connection with research or experimentation. Since the $7,000 was for the acquisition of such an asset, that amount is not deductible as a

---

2. This section continues by giving the following example, which was quoted by the tax court and the Commissioner:

For example, a taxpayer undertakes to develop a new machine for use in his business. He expends $30,000 on the project of which $10,000 represents the actual costs of material, labor, etc., to construct the machine, and $20,000 represents research costs which are not attributable to the machine itself. Under section 174(a) the taxpayer would be permitted to deduct the $20,000 as expenses not chargeable to capital account, but the $10,000 must be charged to the asset account (the machine). Treas. Reg. § 1.174-2(b)(4).

**526**

research or experimentation expense. Sec. 1.174–2(b)(1), (2), (3) and (4), Income Tax Regs."

■ The Commissioner argues that the taxpayers are barred by the doctrine of judicial estoppel from disputing that the cost is subject to depreciation because they took that position in the tax court. *See Griffith v. Wal–Mart Stores, Inc.,* 135 F.3d 376, 380 (6th Cir.1998) (judicial estoppel forbids a party from taking position inconsistent with one successfully and unequivocally asserted in prior proceeding). It appears from the tax court's decision, however, that the taxpayers took the position that the cost was deductible, but if not, then it was depreciable. Thus, judicial estoppel is not appropriate here.

Taxpayers argue on appeal that an assumption underlying these sections is that the asset to be depreciated is one used in producing final goods which will be sold. We disagree. The clear import of these sections is that the character of the property, not the use of the property, is critical to the determination of whether an expense is deductible or only depreciable. Taxpayers also argue that the cost of the engine is not depreciable because the engine is "not subject to wear and tear, but is intentionally being destroyed as part of the on-going research[.]" While there was some indication that the engine was purchased with the intention of "blowing it up," Ekman's testimony makes unequivocally clear that the engine was repaired, modified, and five years later was still running. He explained that by "blowing" the engine, he meant some internal damage and that he would stop short of actually destroying the engine. The engine would then be taken apart and examined for wear and repaired. It was not clearly erroneous for the tax court to find that the engine was property subject to wear and tear, even excessive wear and tear, and a

depreciable rather than deductible research or experimentation expense.[3]

**B. Litigation Costs**

■ Reasonable litigation costs and attorney fees may be awarded to a prevailing party under certain conditions. A prevailing party is one who can show that the position of the United States in the proceeding was not substantially justified and who prevailed with respect to the amount in controversy or with respect to the most significant issue or issues. *See* 26 U.S.C. § 7430. The burden of proof lies with the party seeking costs. *See* Tax Court Rule 232(e). We review the tax court's determinations under § 7430 for abuse of discretion. *See William L. Comer Family Equity Pure Trust v. Commissioner,* 958 F.2d 136 (6th Cir.1992).

■■ The tax court found the taxpayers had failed to show that the Commissioner's position with respect to either the deductions that were allowed or the treatment of the expenditure for the engine was not substantially justified. The term "substantially justified" means "justified to a degree that could satisfy a reasonable person" or having a "reasonable basis both in law and fact." *Id.* at 139 (adopting definition from *Pierce v. Underwood,* 487 U.S. 552, 563–65, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)).

The taxpayers argue that the Commissioner's position was not substantially justified because the assessed deficiency of $307 was just over 10 percent of the $2,929 claimed in the notice of deficiency. While it is true that the Commissioner allowed all but one of the claimed expenses as deductions, the tax court found no evidence that the Commissioner's position in issuing the notice of deficiency was unreasonable. The tax court also noted that the only

3. Thus, we need not address the Commissioner's alternative argument that a deduction was nonetheless not available under § 174(a) because the accompanying regulation provides that research or experimental expenditures do not include expenditures for "[t]he acquisition of another's patent, model, production or process" and the Porsche 928 S4 engine was a "model" manufactured by another. Treas. Reg. § 1.174–2(a)(3)(vi).

evidence in that regard was the Commissioner's statement that the adjustments were conceded after documentation was produced at a meeting with the taxpayers' counsel and accountant. With respect to the cost of the engine, the tax court found that not only was the Commissioner's position substantially justified, it was sustained by the court. The taxpayers have failed to show that the tax court abused its discretion in denying their petition for $13,850 in costs and attorney fees.

**AFFIRMED.**