James E. CRAMER, et al., Plaintiffs

v.

UNITED STATES of America,
Defendant.

Case No. 1:11 CV 276.

United States District Court,
N.D. Ohio,
Eastern Division.

July 25, 2012.

Derek J. Walden, Killough Law, Columbus, OH, for Plaintiffs.

Andrea A. Kafka, U.S. Department of Justice, Washington, DC, for Defendant.

*ORDER*

SOLOMON OLIVER, JR., Chief Judge.

Plaintiffs James and Sherry Cramer ("Plaintiffs" or the "Cramers") filed this action under 26 U.S.C. § 7422 against the United States of America ("the United States"). Plaintiffs assert that the United States wrongly denied their theft loss deduction for taxable year 2007. Currently pending before the court are Plaintiffs' Motion for Summary Judgment (ECF No. 21) and the United States' Motion for Summary Judgment (ECF No. 20). For the following reasons, the court denies Plaintiffs' Motion and grants the United States's Motion.

## I. BACKGROUND

The relevant facts of this case are largely undisputed. Plaintiffs purchased two unsecured promissory notes from Joanne and Alan Schneider (the "Schneiders") in 2004—the first note on May 3 in the amount of $50,000 and the second on May 20 for $20,000. (Aff. of James E. Cramer ¶¶ 3–4, ECF No. 21–1; Promissory Notes, ECF Nos. 1–1, 1–2.) As a result of these investments, Plaintiffs reported $6,801.00 in interest income on their 2004 tax return. (*Id.* ¶ 5.) Unbeknownst to Plaintiffs, the Schneiders were defrauding investors in a massive Ponzi scheme. (Pls.' Ex. 3 at 4, ECF No. 21–3.) The Schneiders lured investors into purchasing promissory notes with the promise of unrealistic interest rates, and then used the money from new investors to repay earlier ones. (*Id.*)

The Ohio Department of Commerce ("ODC") filed *ODC v. Schneider* on Dec. 1, 2004 in the Cuyahoga County Court of Common Pleas in order to stop the Schneiders from selling unsecured promissory notes. The ODC successfully obtained a preliminary injunction against the Schneiders. (*ODC v. Schneider et al.*

Complaint, Pls.' Ex. 2, ECF No. 21–2.) The court also appointed a special master—Matthew Fornshell, former director of enforcement for the Ohio Division of Securities—to supervise compliance with the injunction. James Cramer avers that it was "at this time that I first realized that my unsecured investment with the Schneiders would not be recovered." (Cramer Aff. ¶ 9.) By the time the suit was filed, the Schneiders owed approximately $60 million in unpaid notes, but none of the notes were in default as of December 2004. (Pls.' Ex. 2 at ¶ 15.) The Schneiders continued to sell the notes in violation of the court's order until February 2005 when their assets were frozen. (*ODC v. Schneider et al.* Dkt., Def. Ex. 6B at 56–57, ECF No. 20–9.) The court then elevated Fornshell to Receiver to oversee the liquidation of the Schneiders's assets and the distribution of those assets to investors. (*Id.*)

In his capacity as Receiver, Fornshell filed periodic updates with the court. In a filing made on December 2008 as part of the *ODC v. Schneider* litigation, the Receiver reported that the liquidation of the Schneiders's assets yielded a total of $20,955,622.98. (Def. Ex. 7 at 3, ECF No. 20–10.) In the same report, the Receiver also told the court it was unknown how much of the Schneiders's assets would be distributed to unsecured investors until the claims of secured investors were resolved. (*Id.* at 2.) Of that approximately $21 million, secured creditors eventually made claims in the amount of $20 million dollars. (Pls.' Mot. at 15.)

Plaintiffs were also involved in two other suits concerning their investments with the Schneiders, both filed by the Receiver. The first suit was *Kathy Young v. First Merit Bank,* filed on May 10, 2006 and the second was *Fornshell v. FirstMerit Corp.,* filed on May 24, 2006. (Def.'s Exs. 9, 11, ECF No. 20–12, 14.) *Fornshell* was brought by the court-appointed Receiver on behalf of unsecured creditors. (Def. Ex. 9, ECF No. 20–12.) Plaintiffs recovered 17% of their investment, in the amount $11,900, on December 12, 2011 from a settlement in *Forshnell v. First-Merit.* (Def. Ex. 7 at 3, ECF No. 23–10.) On December 27, 2011, the Receiver notified unsecured investors that he did not expect additional funds to become available for reimbursement. (Pls.' Mot. 9, ECF No. 21.)

This suit arises out of Plaintiffs' attempt to claim as a deduction the theft loss resulting from their lost investments with the Schneiders. The Plaintiffs first claimed a theft loss of $76,801 on their amended return for taxable year 2004, including $70,000 in principal and $6,801 in "phantom" interest allegedly due on the promissory notes. (Cramer Aff. ¶¶ 5, 11.) The Internal Revenue Service ("IRS") disallowed the theft loss claim for 2004 by letter dated March 19, 2008 because the amount that could be recovered was not ascertainable in 2004. (Def. Ex. 5, ECF No. 20–7.) After learning that their claim was disallowed, Plaintiffs filed an amended 2007 tax return claiming a loss in the amount of $76,801.00 for 2007. (Cramer Aff. ¶¶ 13–14; Amended Return, ECF No. 1–3.) This claim created a net operating loss ("NOL") that was carried back three years, to 2004. (Cramer Aff. ¶ 14.) Alongside the amended 2007 return, the Cramers filed a Form 1045, Application for a Tentative Refund, reflecting the NOL carry-back to 2004. (Cramer Aff. ¶ 15; Application for Tentative Refund, ECF No. 1–4.) James Cramer avers that he pursued the theft loss claim in 2007 based on a representation made by an IRS Appeals Officer, during the appeals process, "that the correct year to take a Schneider investment theft loss was 2007." (Cramer Aff. ¶ 12.) The amended theft loss claim for 2007 was also denied by the IRS. (*Id.*

¶ 16.) The IRS Appeals Office disallowed the claim on March 12, 2010. (ECF No. 1–5.)

On February 8, 2011, Plaintiffs filed a refund action in this court pursuant to 26 U.S.C. § 7422. Plaintiffs claim that their refund request was wrongfully denied in 2007 and seek a refund of $7,622. (Compl. ¶ 1, ECF No. 1.) On March 1, 2012, the United States filed its Motion for Summary Judgment against the Cramers. (Def.'s Mot. for Summary J., ECF No. 20.) Plaintiffs filed their Motion for Summary Judgment on March 2, 2012. (Pls.' Mot. for Summary J., ECF No. 21.) On March 30, 2012, both parties filed Oppositions to the respective Motions for Summary Judgment. (Pls.' Opp'n, ECF No. 22; Def.'s Opp'n, ECF No. 23.) Only the United States filed a Reply in further support of its Motion. (ECF No. 24.)

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) governs summary judgment motions and provides that:

A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. . . .

A party asserting there is no genuine dispute as to any material fact or that a fact is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed.R.Civ.P. 56(c)(1).

In reviewing summary judgment motions, this court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943–44 (6th Cir.1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most cases the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252, 106 S.Ct. 2505. However, "[c]redibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment." *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir.1999). The moving party has the burden of production to make a prima facie showing that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the burden of persuasion at trial would be on the non-moving party, then the moving party can meet its burden of production by either: (1) submitting "affirmative evidence that negates an essential element of the nonmoving party's claim"; or (2) demonstrating "to the court that the nonmoving party's evidence is in-

sufficient to establish an essential element of the nonmoving party's claim." *Id.*

However, "where the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States,* 799 F.2d 254, 259 (6th Cir.1986) (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact,* 99 F.R.D. 465, 487–88 (1984)). Thus, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie,* 526 U.S. 541, 553, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999).

If the moving party meets its burden of production, then the non-moving party is under an affirmative duty to point out specific facts in the record which create a genuine issue of material fact. *Fulson v. City of Columbus,* 801 F.Supp. 1, 4 (S.D.Ohio 1992). The non-movant must show "more than a scintilla of evidence to overcome summary judgment"; it is not enough to show that there is slight doubt as to material facts. *Id.* Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–80 (6th Cir.1989) (citing *Frito-Lay, Inc. v. Willoughby,* 863 F.2d 1029, 1034 (D.C.Cir.1988)).

## III. STATUTORY AND REGULATORY FRAMEWORK

A taxpayer can claim as a deduction "any loss sustained during the taxable year and not compensated for by insurance or otherwise." *See* 26 U.S.C. § 165. Pursuant to 26 U.S.C. § 165(e), a theft loss "shall be treated as sustained during the taxable year in which the taxpayer discovers such loss." *See also* 26 C.F.R. § 1.165–1(d)(3). However, "if in the year of discovery there exists a claim for reimbursement with respect to which there is a reasonable prospect of recovery, no portion of the loss with respect to which reimbursement may be received is sustained, for purposes of section 165 [26 U.S.C. § 165], until the taxable year in which it can be ascertained with reasonable certainty whether or not such reimbursement will be received." 26 C.F.R. § 1.165–1(d)(3).[1] Theft losses also qualify as net operating losses and may be "carried back" up to three taxable years or "carried over" to each of the taxable 20 years following the taxable year of the theft loss. 26 U.S.C. § 172(a), (b)(1)(F)(ii)(I).[2]

Whether a taxpayer has a reasonable prospect of recovery is a question of fact to be answered objectively. *See* 26 C.F.R. § 1.165–1(d)(2)(i); *see also Jeppsen v. Comm'r,* 128 F.3d 1410, 1418 (10th Cir. 1997). The taxpayer's subjective assessment of his prospects is considered only to a limited extent in this analysis. *See Jeppsen,* 128 F.3d at 1418 (*citing Ramsay Scarlett & Co. v. Comm'r,* 521 F.2d 786,

---

1. Notwithstanding 26 C.F.R. § 1.165–1, Safe Harbor provisions allow victims of fraud to claim 75% of their theft loss while pursuing recovery under certain circumstances. (Pls.' Mot. at 13–14.) However, as Plaintiffs concede, the Safe Harbor provisions do not apply to theft loss claims made before December 31, 2007, and therefore the provisions are not applicable to this action. (Pls.' Mot. at 14.)

2. The Sixth Circuit has explained that the tax code's carry-back and carry-over provision allows "a taxpayer to set off its lean years against its lush years, and to strike something like an average taxable income computed over a period longer than one year." *Intermet Corp. & Subsidiaries v. Comm'r,* 209 F.3d 901, 904 (6th Cir.2000).

788 (4th Cir.1975)). The standard to determine if a reasonable prospect exists is one of foresight, and therefore the court only considers facts which are reasonably foreseeable at the close of the taxable year. *See Estate of Scofield v. Comm'r,* 266 F.2d 154, 163 (6th Cir.1959); *see also Vincentini v. Comm'r,* 429 Fed.Appx. 560, 564 (6th Cir.2011) (explaining that "the Court must examine a taxpayer's reasonable expectations at the close of the taxable year in which the deduction was claimed").

■■■ A reasonable prospect of recovery exists if a taxpayer has a bona fide claim for reimbursement against a third party or otherwise, and the party's chances of recovery in that suit are substantial. *See Jeppsen,* 128 F.3d at 1418. Even a reasonable prospect of partial recovery is sufficient to delay a taxpayer from claiming a loss deduction until the litigation concludes. *See Estate of Scofield,* 266 F.2d at 159. This comports with the language of 26 C.F.R. § 1.165–1(d)(3), which states that "no portion of the loss with respect to which reimbursement may be received is sustained" if there exists a claim for reimbursement for which there is a reasonable prospect of recovery. 26 C.F.R. § 1.165–1(d)(3). But, "[t]axpayers need not refrain from taking a loss deduction simply because there exists a remote or nebulous possibility of recovery." *Vincentini,* 429 Fed.Appx. at 564 (citations omitted).

■■■ Ultimately, the burden is on the taxpayer to establish that he had a deductible loss. *See Boehm v. Comm'r,* 326 U.S. 287, 294, 66 S.Ct. 120, 90 L.Ed. 78 (1945); *Jeppsen,* 128 F.3d at 1418. The IRS's tax determinations are presumed to be correct and "the burden rests upon the taxpayer to prove all the facts necessary to establish the illegality of the collection." *Sherwin–Williams Co. v. United States,* 403 F.3d 793, 796 (6th Cir.2005) (*quoting Niles Be-*

*ment Pond Co. v. United States,* 281 U.S. 357, 361, 50 S.Ct. 251 (1930)). If the prospect of recovery is simply unknowable, the taxpayer cannot claim a deduction until the chance of recovery can be ascertained. *See Jeppsen,* 128 F.3d at 1418; *see also Vincentini,* 429 Fed.Appx. at 564 (explaining that "[s]peculation and conjecture will not support a taxpayer deduction under this provision").

## IV. ANALYSIS

### A. Plaintiffs' Motion for Summary Judgment

■■■ In their Complaint, Plaintiffs allege that they are entitled to a "refund of $7,622 of internal revenue taxes erroneously collected for a loss *sustained in the 2007 tax year.* Their 2007 loss created a net operating loss that was *carried back to 2004.*" (Compl. ¶ 1 (emphasis added).) Yet, in their Motion for Summary Judgment, the Cramers "maintain that the appropriate year of discovery is 2004 because that was the first point where the Cramers realized they had no reasonable prospect of recovering their initial investment amount. Thus, the Cramers use of 2007 as their personal year of discovery is equally appropriate." (Pls.' Mot. p. 2.) By asserting, in their Motion for Summary Judgment, that 2004 is the year of discovery (i.e., the taxable year in which the theft loss was sustained), Plaintiffs have altered their theory of recovery (i.e., a 2007 theft loss that can be carried back three years). Under this new theory, Plaintiffs maintain that the court may only analyze facts in existence as of December 31, 2004. But regardless of whether the court views 2004 or 2007 as the appropriate year of discovery, Plaintiffs are not entitled to summary judgment.

With respect to their argument that 2004 is the appropriate year of discovery, Plaintiffs present only their own specula-

tion that, when the Cuyahoga County Court of Common Pleas issued a preliminary injunction against the Schneiders in December of 2004, they "first realized that [their] unsecured investment with the Schneiders would not be recovered." (Cramer Aff. ¶ 9.) Plaintiffs assert that "2004 was the first year where the Schneiders' Ponzi scheme began to unravel" and "the first time the public was made aware of the depth of the Schneiders criminal activities." (Pls.' Mot. p. 16–17.) But as noted above, conjecture and speculation are insufficient to support a theft loss deduction. *Vincentini,* 429 Fed.Appx. at 564. If the prospect of recovery is simply unknowable, the taxpayer cannot claim a deduction until the chance of recovery can be ascertained. *See Jeppsen,* 128 F.3d at 1418; *see also Vincentini,* 429 Fed.Appx. at 564 (explaining that "[s]peculation and conjecture will not support a taxpayer deduction under this provision"). Viewing the evidence in the light most favorable to the United States, a reasonable jury could find that the prospect of recovery was simply unknowable in 2004 in light of the fact that litigation against the Schneiders had only commenced in December of 2004. Indeed, as part of *ODC v. Schneider,* the Receiver did not report the total yield of the liquidation of the Schneiders's assets until 2008. (Def. Ex. 7 at 3, ECF No. 20–10.) Similarly, if the court were to view 2007 as the relevant year, a reasonable jury could still conclude that the prospect of recovery remained unknowable in light of the Receiver's ongoing litigation against FirstMerit Bank. Because the record in this case is susceptible to such inferences, summary judgment in favor of the Plaintiffs is inappropriate.

▆▆ Finally, while Plaintiffs present an affidavit from John Lewis, former Vice President of Operations of Fraud Recovery Group, Inc., in which Lewis avers that he successfully claimed theft loss deductions for eleven taxpayers using 2004 as

the year of discovery, (Lewis Aff., ECF No. 21–5), the court will not find in Plaintiffs' favor under an estoppel theory because the question of whether a taxpayer can properly claim a theft loss deduction is a case and fact specific determination. Therefore, Plaintiffs' argument that "[t]here is strong public policy in favor of uniform application and interpretation of the federal tax laws," (Pls.' Mot. at 18 (citing *Adams v. United States,* 420 F.Supp. 27, 30 (S.D.N.Y.1976))) is unavailing.

## B. The United States's Motion for Summary Judgment

In its Motion, the United States "disputes that 2007 is the proper year for the Cramers to claim any their [sic] theft loss deduction, as in 2007, it was not ascertainable with reasonable certainty that there was a theft loss and that the Cramers would not recover anything on their investment." (Def.'s Mem. in Support 2, ECF No. 20–1.) The United States does not dispute "that a loss in some amount would properly be characterized as a theft loss for some other taxable year." (*Id.*)

▆▆ The taxpayer bears the burden of demonstrating that the Government collected an incorrect tax amount and that he is entitled to a refund. *See Sherwin–Williams,* 403 F.3d at 796; *see also Jeppsen,* 128 F.3d at 1418. In this case, Plaintiffs must demonstrate that the claims for reimbursement against the Schneiders and third parties like FirstMerit, extant as of December 31, 2007, did not present reasonable prospects of recovery. *See* 26 C.F.R. § 1.165–1(d)(3). Lawsuits present a reasonable prospect of recovery unless their "potential for success are remote or nebulous." *See Jeppsen,* 128 F.3d at 1415 (quoting *Ramsay Scarlett & Co. v. Comm'r,* 61 T.C. 795, 811–12 (1974)). Only those facts that were known or reasonably

foreseeable at the end of 2007 are relevant to the court's analysis. *See Estate of Scofield,* 266 F.2d at 163; *see also Vincentini,* 429 Fed.Appx. at 564.

In their Opposition, Plaintiffs "do not deny that additional litigation was taking place after 2004 or that, shortly after the filing of this Complaint, they received a settlement amount from the Receiver's case against First Merit." (Pls.' Opp'n 3.) Rather, they argue that these facts are irrelevant because the court cannot look to events taking place after December 31, 2004. (*Id.* 3–4.) Plaintiffs, however, overlook their own pleadings in this case. As noted above, Plaintiffs alleged in their Complaint a "2007 loss" which they attempted to carry back to 2004 as an NOL. (Compl.¶ 1.) Because this suit arises from Plaintiffs' unsuccessful attempt to claim the theft loss deduction in 2007 and to seek a refund for taxable year 2004 pursuant to a carry back, the court may properly consider the facts in existence as of December 31, 2007.

At the end of 2007, it is undisputed Plaintiffs were involved in litigation against FirstMerit Bank concerning their investment with the Schneiders. Plaintiffs have presented no evidence that as of December 31, 2007, their chances of recovery from this third-party litigation was nebulous or remote. Accordingly, there is insufficient evidence from which a reasonable jury could find Plaintiffs had no reasonable prospect of recovery from the ongoing claims for reimbursement at the close of 2007. Therefore, Defendant's Motion for Summary Judgment is granted.

## V. CONCLUSION

For the foregoing reasons, the court denies Plaintiffs' Motion for Summary Judgment (ECF No. 21), and grants the summary judgment motion of Defendant United States. (ECF No. 20.)

IT IS SO ORDERED.